United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 23, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

—————————————

No. 02-11007

—————————————

ANDRE ANTHONY LEWIS,

                              Petitioner-Appellant,

versus

DOUGLAS DRETKE, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

                              Respondent-Appellee.

--------------------
Appeal from the United States District Court
for the Northern District of Texas
--------------------

Before KING, Chief Judge, and DAVIS and WIENER, Circuit Judges.

PER CURIAM:

     Petitioner-Appellant Andre Anthony Lewis appeals the district court's second denial of his petition for habeas corpus filed pursuant to 28 U.S.C. § 2254. On appeal from the district court's first denial of Lewis's petition for habeas relief, we vacated that ruling insofar as it denied relief on Lewis's claims of ineffective assistance of counsel during the punishment phase of his murder trial, and we remanded the case to the district court with instructions to conduct a full evidentiary hearing on those claims. After conducting such an evidentiary hearing, the district court again denied relief, this time on all of Lewis's remanded claims.

The district court then granted a certificate of appealability ("COA") to allow Lewis to appeal those claims. We reverse and remand with instructions to grant habeas corpus relief.

**I**

**<u>ANALYSIS</u>**

A.   <u>Standard of Review</u>

Lewis filed his instant petition before the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Therefore, pre-AEDPA habeas corpus law applies to Lewis's petition. See <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997); <u>Green v. Johnson</u>, 116 F.3d 1115, 1120 (5th Cir. 1997). Because the state court did not make any factual findings regarding these claims when they were raised in a state habeas corpus application, no deference is owed to the state court's resolution of the instant claims. See <u>Perillo v. Johnson</u>, 79 F.3d 441, 446 (5th Cir. 1996).

Furthermore, our scope of review after remand is limited to "whether the court below reached its final decree in due pursuance of [this court's] previous opinion and mandate." <u>Burroughs v. FFP Operating Partners</u>, 70 F.3d 31, 33 (5th Cir. 1995). The district court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed <u>de</u> <u>novo</u>. See <u>Johnson v. Puckett</u>, 176 F.3d 809, 813 (5th Cir. 1999). As claims of ineffective assistance of counsel involve mixed questions of law and fact, they

2

are reviewed <u>de</u> <u>novo</u>.  <u>See</u> <u>United States v. Placente</u>, 81 F.3d 555, 558 (5th Cir. 1996).

B.  <u>Lewis's Burden</u>

To prevail on his claim of ineffective assistance of counsel, Lewis must show that his defense counsel's performance in the punishment phase of Lewis's trial was deficient, i.e., that it "fell below an objective standard of reasonableness."  <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984).  If successful, Lewis then must prove that there is a reasonable probability that, but for defense counsel's deficient performance, the result of the proceedings would have been different.  <u>Id.</u> at 694.  Failure to establish either prong defeats the claim.  <u>Id.</u> at 697.

C.  <u>Lead Poisoning; Psychiatric Examination</u>

In our previous order of remand, we expressed concern with defense counsel's failure to submit Lewis for psychiatric testing. We also noted concern for defense counsel's handling of the question of lead poisoning.  According to the expert testimony presented at the evidentiary hearing, however, Lewis's claim that he had been exposed to high levels of lead as a child could not be conclusively proven, and any lingering effects of Lewis's alleged lead poisoning could be shown only through a psychiatric evaluation. As to both questions, the record supports the district court's holding that Lewis's defense counsel made a strategic, informed decision to forego a psychiatric evaluation of Lewis to avoid the testimony of the State's expert psychiatric witness on

3

the special issue of future dangerousness.  Accordingly, defense counsel's performance regarding psychiatric testing, both generally and in regard to lead poisoning, was not deficient.  See Green v. Johnson, 116 F.3d 1115, 1122 (5th Cir. 1997); Williams v. Collins, 16 F.3d 626, 634 (5th Cir. 1994).  Therefore, we need not determine whether Lewis was prejudiced by defense counsel's decision to forego psychiatric testing.  The district court's denial of Lewis's ineffective-assistance claims regarding defense counsel's failure to submit him for psychiatric testing and to investigate or submit mitigating evidence of his alleged lead poisoning was proper.

D.    Sufficiency of Investigation into Mitigating Evidence

We cannot affirm, however, the district court's denial of Lewis's claim that defense counsel was ineffective in failing to investigate mitigating evidence of his abusive childhood.[1]  In our previous order of remand, we expressed concern about the amount of time that defense counsel spent —— more accurately, might not have spent —— in preparing for Lewis's punishment phase, and with defense counsel's failure to adduce mitigating evidence of Lewis's abusive childhood.  This concern was aggravated by the fact that the lead defense counsel testified at Lewis's sentencing hearing that the defense's investigation of punishment phase issues was

---

[1] We note that the district court's investigation into defense counsel's representation of Lewis during his punishment phase was greatly hindered by the fact that, because their files were unavailable, the testimony of each defense counsel was primarily based on his or her memory after the passage of more than fourteen years following the punishment phase of Lewis's trial.

4

incomplete. The district court's findings on remand were not sufficiently focused on whether defense counsel reasonably fulfilled their duty to investigate mitigation in general and Lewis's abusive childhood in particular.

"[I]n the context of a capital sentencing proceeding, defense counsel has the obligation to conduct a 'reasonably substantial, independent investigation' into potential mitigating circumstances." Neal v. Puckett, 286 F.3d 230, 236 (5th Cir. 2002)(citation omitted). "In assessing counsel's performance, we look to such factors as what counsel did to prepare for sentencing, what mitigating evidence he had accumulated, what additional 'leads' he had, and what results he might reasonably have expected from these leads." Id. at 237. The focus of this inquiry is "not whether counsel should have presented a mitigation case," but "whether the investigation supporting counsel's decision not to introduce mitigation evidence . . . *was itself reasonable*." Wiggins v. Smith, 123 S. Ct. 2527, 2536 (2003)(emphasis in original).[2] A limited investigation into mitigating evidence may be reasonable only if counsel has a basis for believing that further investigation would be counterproductive or fruitless. See id. at 2537 (and cases cited therein).

---

[2] As the Supreme Court's opinion in Wiggins was issued after the district court's judgment was entered, the district court did not have the benefit of Wiggins when deciding the instant issue.

1.  <u>Deficiency of Performance</u>

In its current state, the record does not reveal whether defense counsel conducted an investigation into Lewis's childhood abuse and, if so, whether such investigation was sufficient under the aforementioned standards. As noted, one difficulty with this case is the understandably hazy memories of both defense counsel as to the extent of their investigation. The magistrate judge nevertheless found that counsel did attempt to speak with family members about Lewis's abusive background, but that the family members were "not forthcoming." This finding is based, however, on but one brief passage in the testimony of defense co-counsel, Jan Hemphill: "I don't believe they were [forthcoming] and I don't know if I didn't probe enough or they weren't forthcoming or if I didn't ask the right questions."

This mere modicum of evidence is insufficient to support the district court's conclusion. Counsel was obviously straining to remember what had occurred, and she even qualified her statement by conceding that the lack of response from family members might have been attributable to her failure to ask the right questions. Significantly, defense attorney Hemphill could provide no details about whom she questioned, what questions she asked, and what responses were forthcoming. Additionally, her pardonably vague testimony is contradicted by the specific testimony of petitioner's sisters, Tammy Lewis, Peggy Clemmons, and Arlisa Lewis, each of whom testified at the habeas hearing that, <u>inter</u> <u>alia</u>, they were

6

present at Lewis's trial but that counsel never spoke with any of them.

The State endeavors to support defense counsel's failure to adduce evidence of an abusive childhood by classifying it as a tactical decision. The State argues that defense counsel could have reasonably believed that, if adduced, evidence of severe childhood abuse would be more harmful than helpful under then existing law, because the court's instructions would not give the jury an avenue under which it could use the evidence in mitigation. Nothing in counsel's testimony, however, supports the theory of their decision having been tactical. This likely explains why the district court did not advert to the grounds of tactics or strategy to justify counsel's failure to adduce evidence of Lewis's abusive childhood.

It is axiomatic — particularly since <u>Wiggins</u> — that such a decision cannot be credited as calculated tactics or strategy unless it is grounded in sufficient facts, resulting in turn from an investigation that is at least adequate for that purpose. It may well be that here the district court harbored concerns that counsel had not established that they conducted a sufficiently thorough investigation of abuse to be in a position to make a strategic decision not to use the evidence. The district court observed that counsel adduced evidence of child abuse through the testimony of Lewis's grandmother, Lula. Yet, her conclusional testimony contained none of the details provided by Lewis's

7

siblings at the habeas hearing, which could have been truly beneficial. Lula's skeletal testimony concerning the abuse of her grandson was wholly inadequate to present to the jury a true picture of the tortured childhood experienced by Lewis.

We are always reluctant to question a district court's factual finding when it is grounded in the credibility (or lack thereof) of a witness who that court hears and views in person but of whom we see nothing more than a cold record. Nevertheless, reversing such a call under review for clear error (much less de novo) is certainly not unheard of. Indeed, this is one of those rare instances in which we are constrained to reverse the district court's rejection, on credibility grounds, of the testimony of Lewis's siblings at the habeas hearing. A careful reading of their testimony and supporting portions of the record leaves us with the clear belief that a mistake has been made.

First, the testimony of Lewis's sisters is remarkably consistent. Each testified that their (and Lewis's) father beat all of them with extension cords, switches, sticks, or anything else within his reach. They testified further that he regularly made them undress, then whipped them in the area of their genitals, and that this conduct occurred at least every other day. According to Lewis's sisters, all of the children lived in constant fear of their father's rages, particularly when he was unable to get the drugs to which he was addicted.

8

Each of Lewis's sisters testified that she attended his trial, but added that counsel never asked her to testify. Tammy Lewis testified further that defense counsel did not make an effort to speak with her; and that, despite her indication to counsel that she was willing to testify, counsel never followed up and never called her to the stand.

We must also disagree with the district court's statement that there was no corroborating evidence to support the testimony of these three witnesses. There is abundant record evidence that Lewis's father was a violent drug abuser; that he shot Lewis's mother in the stomach and leg, almost killing her; and that, in the presence of Lewis and the other children, he beat their mother on numerous occasions. Additionally, medical records in evidence show that the children made numerous trips to the hospital emergency rooms for treatment of injuries that were consistent with the described beatings. The record reveals, <u>inter</u> <u>alia</u>, that Lewis had to be hospitalized for cuts on his penis and for an infection he developed when a hypodermic needle was stuck into his foot. And these records also reflect that Lewis's sister, Arlisa, was treated for severe burns on her back and that their mother had suffered a gunshot wound. This record evidence is consistent with the testimony of the sisters, as is the evidence of approximately seven "domestic disturbance" calls to 911 from the Lewis household between 1975 and 1978.

9

The district court reached its conclusion that defense counsel's performance was reasonable despite the absence of the kind of inquiry and focus required in the Supreme Court's subsequent opinion in Wiggins. We therefore have no choice but to reject that conclusion.

2. Prejudice Prong of Strickland.

Likewise flawed is the district court's conclusion that Lewis was not prejudiced by defense counsel's deficient performance. It is obvious to us that the level of abuse to which Lewis was exposed mandates the conclusion that, had this evidence been produced, it is quite likely that it would have affected the sentencing decision of at least one juror. The district court examined the testimony presented by Lewis's family members at the evidentiary hearing and held that such testimony would either be inadmissible or be given little weight under the nexus requirement set forth in Penry v. Lynaugh, 492 U.S. 302 (1989). The court based this holding on the time that elapsed between the alleged child abuse and the commission of the crime of conviction, and on the fact Lewis had intervening criminal convictions.[3] Mitigating evidence of childhood abuse, however, was considered in Williams v. Taylor, 529 U.S. 362, 398 (2000), and in Wiggins, 123 S. Ct. at 2532, 2542-

---

[3] Although Lewis's sentencing occurred prior to issuance of Penry, Penry is relevant to the instant issue because, unlike the deficiency prong, Strickland's prejudice prong is measured under current law. See Westley v. Johnson, 83 F.3d 714, 723 (5th Cir. 1996).

10

43, despite the fact that in each of those cases, the time that elapsed between the instances of abuse and the commission of the crime of conviction were greater than such period in the instant case. Furthermore, the defendant in <u>Williams</u> had many intervening criminal convictions. <u>See</u> <u>Williams v. Taylor</u>, 163 F.3d 860, 867 (4th Cir. 1998), <u>reversed by</u> <u>Williams</u>, 529 U.S. at 399. The district court's conclusion regarding the temporal nexus requirement was therefore erroneous.

## II

## <u>CONCLUSION</u>

As we conclude that the district court's resolution of both prongs of Lewis's claim of ineffective assistance at sentencing is erroneous in regards to the mitigating evidence of his childhood abuse, we must reverse that court's denial of this claim. Although, as a general proposition, we might remand for further fact finding by the district court, such a disposition would not be appropriate in this case. We are satisfied that, at this late date, no remaining significant evidence is available beyond that which has already been put into the record at the district court: As noted, the trial occurred 14 years before the habeas hearing; by then, both defense counsel had lost or destroyed their files; their memory of what transpired was hazy and is unlikely to be improved; and both Lewis and the State had full opportunities at the hearing to present whatever evidence they cared to present. We are firmly

11

convinced, therefore, that no good purpose would be served by remanding the case to the district court for further proceedings.

For the foregoing reasons, therefore, we REVERSE the district court's rejection of habeas corpus relief, and REMAND this case to that court with instructions to grant Lewis's § 2254 petition for such relief. On remand, the district court shall vacate Lewis's state court sentence of death by lethal injection and order that the State grant him a new penalty phase trial within a reasonable time determined by the district court; or, failing that, that a new sentence of life imprisonment be entered for Lewis, consistent with applicable Texas law.

REVERSED AND REMANDED with instructions.