United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 19, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 01-10646

TED CALVIN COLE,
now known as Jalil Abdul-Kabir,

Petitioner-Appellant,

versus

DOUG DRETKE, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee.

--------------------
Appeal from the United States District Court
for the Northern District of Texas
(6:00-CV-014)
--------------------

Before HIGGINBOTHAM, WIENER, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Petitioner-Appellant Ted Calvin Cole, a Texas death-row inmate

who is now known as Jalil Abdul-Kabir, appeals the district court's

denial of his 28 U.S.C. § 2254 habeas corpus petition. We granted

Cole a Certificate of Appealability (COA) on his claim that his

Sixth Amendment rights, as outlined in Estelle v. Smith, 451 U.S.

454 (1981), were violated by the penalty-phase testimony of Dr.

Richard Coons, a psychiatrist, and on his claim that trial counsel

rendered ineffective assistance for failing to procure and present

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

particular mitigating evidence at penalty phase of his trial. Acting on our own motion, we also issued a COA so that we could, at the same time, examine whether the district court erred in concluding that Cole had shown cause and prejudice to excuse his state procedural default of his ineffective-assistance claim.

We denied Cole's motion for COA as to several other claims, including a claim that the trial court's penalty-phase jury instructions were unconstitutional under Penry v. Lynaugh, 492 U.S. 302 (1989) (Penry I), abrogated on other grounds, Atkins v. Virginia, 536 U.S. 304 (2002). Cole now asks us to reconsider our denial of his COA motion as to this claim. For the reasons set forth below, we deny Cole's motion for reconsideration and affirm the district court's denial of Cole's 28 U.S.C. § 2254 habeas corpus petition.

## I. Facts and Proceedings

In December 1987 Cole was staying at an abandoned motel with his stepbrother, Michael Hickey (Michael), and Michael's wife, Kelly Hickey (Kelly). Cole mentioned to the Hickeys that he was willing to kill someone to obtain cash. Cole and Michael decided to rob Kelly's grandfather, Raymond Richardson, and then strangle him to death.

Two days after this conversation, the three individuals went to Richardson's home and visited with him in his living room for several hours. The group then moved to the kitchen. When Richardson started to leave the kitchen, Cole pushed him to the

2

floor, where he landed face down. Cole then sat on Richardson's back and strangled him with a dog leash that the men had brought to the house for this purpose. Cole exhorted Richardson to "hurry up and die." After Richardson died, the group put his body under his bed. They then searched his house for cash, after which Cole went to a grocery store to buy beer and bacon. Cole brought the groceries back to Richardson's house and shared them with Michael. The morning after the murder, Kelly and Michael turned themselves in to the police and gave statements. Kelly testified at Cole's trial.

Cole was arrested at the victim's home the morning after the murder. Cole gave police two statements in which he admitted murdering Richardson, and these statements were entered into evidence at trial. In one of these statements, Cole explained that the group decided to strangle Richardson because "it was quieter than shooting him and not as messy as cutting his throat, and it just seemed the easiest way to do it." The jury found Cole guilty of capital murder.

In response to special issues in the penalty phase, the jury answered that Cole had deliberately killed Richardson and that there was a probability that Cole posed a threat of future dangerousness. The trial court then sentenced Cole to death. The Texas Court of Criminal Appeals (TCCA) affirmed Cole's conviction and sentence, and the United States Supreme Court denied his petition for a writ of certiorari.

3

Cole filed an application for postconviction relief in state court with the assistance of attorney Carlton McLarty. He raised, inter alia, a <u>Penry I</u> claim and a <u>Smith</u> Sixth Amendment claim. The TCCA denied Cole's application.

Assisted by different counsel, Cole then filed the instant 28 U.S.C. § 2254 habeas corpus petition in the district court. The Respondent argued, inter alia, that Cole's ineffective-assistance claim was procedurally defaulted. The district court conducted a hearing and concluded that Cole had shown cause and prejudice sufficient to excuse any procedural default. The district court ultimately denied all of Cole's claims on the merits and also denied Cole's motions to alter or amend the judgment under FED. R. CIV. P. 59(e) and for a COA.

## II. Analysis

### A. Standards of Review

In the context of a 28 U.S.C. § 2254 habeas petition, we review the district court's procedural rulings de novo and its findings of fact for clear error. <u>Glover v. Cain</u>, 128 F.3d 900, 902 (5th Cir. 1997). The deferential standard of review found in 28 U.S.C. § 2254(d) applies to claims that have been adjudicated in state court. <u>DiLosa v. Cain</u>, 279 F.3d 259, 262 (5th Cir. 2002). Under this standard, a petitioner will not receive relief unless he shows that the state court's disposition of his claims "involved an unreasonable application of clearly established Federal law, as

4

determined by the Supreme Court of the United States."
§ 2254(d)(1).

## B. Procedural Default

A petitioner procedurally defaults his claims when he fails to exhaust state remedies and the court to which he must present his claims to meet the exhaustion requirement would now hold these claims procedurally barred. Magouirk v. Phillips, 144 F.3d 348, 360-61 (5th Cir. 1998); Nobles v. Johnson, 127 F.3d 409, 420 (5th Cir. 1997). A petitioner may overcome a procedural default by demonstrating cause for the default and actual prejudice resulting from it. Martinez v. Johnson, 255 F.3d 229, 239 (5th Cir. 2001). A petitioner demonstrates cause by showing that his efforts to comply with the state's procedural rules were hampered by "some objective factor external to the defense." Murray v. Carrier, 477 U.S. 478, 488 (1986).

Cole does not dispute that his ineffective-assistance claim is procedurally defaulted. Rather, consistent with his arguments in the district court, Cole contends that the state court misled him into believing that he would receive a new attorney after McLarty had to withdraw from his case. He contends that these misrepresentations occurred at a hearing that the state court held, and he argues that these misrepresentations provide cause and prejudice sufficient to excuse his procedural default of his ineffective-assistance claim.

5

Cole's arguments on this issue miss the mark. The record controverts his assertion that the state court affirmatively misled him into believing that he would receive new counsel after McLarty withdrew. Our review of the transcript that Cole relies on in support of this argument reveals no statements by the trial court that could be reasonably interpreted as assuring Cole that an appointment of new counsel would be forthcoming.

The district court thus erred in concluding that Cole had established cause and prejudice to overcome his procedural default. To the extent that the district court's conclusion on this issue included an implicit finding that the state court made affirmative misrepresentations to Cole concerning whether he would receive new habeas counsel, this finding is clearly erroneous.

We note further that, even if the trial court had led Cole to believe that he would receive new counsel, this still would not be sufficient to overcome Cole's procedural default. The legal and factual bases of this claim were available when Cole's habeas application was filed in state court. There is no indication, however, that Cole or his attorney thought of this claim or attempted to raise it at any time prior to the filing of his 28 U.S.C. § 2254 petition. The failure to exhaust thus does not result from an objective factor external to the defense. See Murray, 477 U.S. at 488.

C. Ineffective-Assistance Claim

As Cole's ineffective-assistance claim is thus procedurally defaulted, we could end our analysis here. See Cotton v. Cockrell, 343 F.3d 746, 755 (5th Cir. 2003). We nevertheless address the merits of this claim. See Busby v. Dretke, 359 F.3d 708, 724-26 (5th Cir. 2004), petition for cert. filed (U.S. Feb. 27, 2004) (No. 03-9218); Kunkle v. Dretke, 352 F.3d 980, 986-90 (5th Cir. 2003).

Cole contends that trial counsel Bob Spence rendered ineffective assistance for failing to conduct an adequate investigation of mitigation evidence. Cole argues that, at the penalty phase, Spence should have procured and presented the testimony of Cole's uncle, Ted Dean, and Cole's sister, Carla Marsh, as well as records pertaining to his prior periods of incarceration and his juvenile conviction.

To obtain relief based on ineffective assistance of counsel, a petitioner must demonstrate both that his attorney rendered a deficient performance (cause) and that this substandard performance prejudiced the defense (prejudice). Strickland v. Washington, 466 U.S. 668, 687 (1984). An attorney who represents a capital defendant during penalty phase must perform "a reasonably substantial, independent investigation into potential mitigating circumstances." Neal v. Puckett, 286 F.3d 230, 236 (5th Cir. 2002) (en banc), cert. denied, 537 U.S. 1104 (2003).

When assessing prejudice in the context of the penalty phase of a capital trial, the reviewing court must "reweigh" the

7

aggravating evidence against all available mitigating evidence. Wiggins v. Smith, 123 S. Ct. 2527, 2537, 2542 (2003). If this analysis shows a "reasonable probability" that a reasonable juror, when presented with the omitted mitigating evidence, would have declined to impose the death penalty, then the defendant is entitled to relief. See id. at 2542-44, quote at 2543.

The State presented a strong case at the penalty phase. One of the State's main pieces of evidence was Cole's own diary, which was found in Richardson's home shortly after the murder. In this diary, Cole recorded his desire to "have" a 12-year-old boy named Cody, whom Cole described as "jail bait" (the "Cody passage"). Cole also recorded his desire to find a companion "who is young, attractive and with a sense of adventure, with whom I can roam around the world, sailing in the South Pacific, the Caribbean, exploring the Mediterranean, partying somewhere in the South American jungles, smuggling, stealing, robbing, raping, pillaging, modern-day Vikings or pirates" (the "pirate passage").

The State introduced evidence to show that Cole was charged with the murder of Gary Don Dedecker approximately 15 years before the instant crime. This charge originally resulted in a mistrial. At one point during the trial, Cole told a bailiff that he had killed Dedecker and "would kill him again."

Cole, who was 16 or 17 years old at the time, eventually pleaded guilty to this charge. Cole described Dedecker as his "best friend," yet he gave a statement to police in which he

8

asserted that he murdered Dedecker because he wanted Dedecker's car. He told Kelly that he had killed Dedecker because he wanted to know what it was like to kill a person.

The State introduced the testimony of a family friend who had let Cole stay in her home when he was 23 years old and had nowhere else to go. Cole molested this woman's eight-year-old son and the son's 10-year-old friend, and he was subsequently convicted of sexual assault charges based on these acts. The son, who was 15 years old at the time of trial, testified in detail as to the sexual acts Cole had performed on him and his friend.[1]

Cole also presented evidence at penalty phase. Cole's mother, Nancy Hickey (Nancy), testified that Cole's father, Charles Cole (Charles) had abandoned the family when Cole was five years old. Nancy then placed Cole in a church-run children's home, where he remained for the next five years. Nancy's brother and sister-in-law, Ted and Barbara Dean, were Cole's sponsors while he was in home. They bought him clothing, and he visited their home on holidays.

Nancy eventually remarried, and she regained custody of Cole when he was 10 years old. After Cole returned to Nancy, he made good grades and tried to behave himself. Cole had no legal

---

[1] The state also introduced the testimony of Dr. Coons. As explained in the discussion of Cole's Sixth Amendment claim, the introduction of this testimony was arguably erroneous. Consequently, we have not considered this evidence in analyzing Cole's ineffective-assistance claim.

troubles until he was charged with Dedecker's murder. Barbara Dean testified that Cole seemed to enjoy himself during visits to her home, but he expressed no emotions about returning to the children's home.

Psychologist Jarvis Wright testified that Cole had a high IQ and a difficult childhood. Wright offered the opinion that Cole's personality was "fragmented," that he lacked impulse control, and that he did not know himself very well. Wright observed that persons with backgrounds similar to Cole's tend to "mellow" and make positive life changes starting around age 40. Wright believed that Cole could have central nervous system damage, but his testimony on this issue was somewhat vague. Wright conceded that Cole had a greater probability of future dangerousness than others.

Wendel Dickerson, another psychologist, echoed Wright's opinion that individuals similar to Cole tend to mellow with age. Dickerson also noted that it was very difficult to predict future dangerousness. Dickerson acknowledged that he was not expressing the opinion that Cole was not dangerous and that it was "not an unreasonable assumption" to believe that Cole was dangerous. Dickerson also acknowledged that Cole's test results could support a conclusion that he was a sociopath.

In the district court, Cole presented affidavits from Ted Dean (Ted) and Carla Marsh (Marsh), as well as copies of Cole's prison and juvenile records, to support his argument that Spence should have procured and presented these witnesses' testimony and these

documents.  According to Ted's affidavit, he would have testified that Charles, Nancy, and Nancy's second husband, Paul Hickey (Paul), were bad parents; that Nancy would leave her children with other people for extended periods of time; that Nancy and Paul neglected their children and did not treat them kindly; and that Nancy was a poor housekeeper, and she gave her children no spending money.

Marsh too would have testified that Nancy, Paul, and Charles were bad parents.  Marsh stated that Cole was reserved after he left the children's home, where he was not treated well; that Paul would beat Cole; and that on one occasion Marsh thought Paul was going to drown Cole until she intervened on Cole's behalf.

Cole's prison records reflect that his only prison disciplinary infractions involved nonviolent behavior.  These records are not, however, wholly favorable to Cole.  The records from Cole's sexual assault conviction show that he molested his young victims at knifepoint.

Cole's juvenile records are likewise not entirely favorable to Cole.  His years at the children's home are described as unpleasant, but no details are given.  A psychiatrist described him as having a poorly socialized, schizoid personality.  The family home is described as dirty and needing a good cleaning.  On the other hand, the records also describe Nancy as a loving and concerned parent.  Another portion of the records describes the Hickey home as clean and well-kept.

11

## 1. Performance

The issue whether Spence rendered a deficient performance in connection with his investigation into potential mitigating evidence presents a close question. Our analysis of this issue is complicated by the fact that Spence died in a car accident prior to Cole's filing of his § 2254 petition. Consequently, it is impossible to ascertain the extent of Cole's investigation in relation to penalty-phase preparations. It is likewise impossible to determine whether he deliberately chose to end his investigation because he felt that he had sufficient mitigating evidence or because he simply did not think to obtain the evidence on which Cole now relies.

It is apparent that Spence did make some preparations for the penalty phase, as he did present some mitigating evidence. Compare Wiggins, 123 S. Ct. at 2532. The evidence Cole now offers, however, is subtly different from that presented at trial, and there is no indication that Spence tried to obtain it. Given the "volume and easy availability" of this evidence, it is at least arguable that Spence performed deficiently when he failed to investigate and failed to obtain this evidence. See Neal, 286 F.3d at 240. Further, as Spence failed to obtain this evidence, it cannot be said that he made a strategic decision to refrain from using it. See Neal, 286 F.3d at 242; compare Jernigan v. Collins, 980 F.2d 292, 296-97 (5th Cir. 1992).

12

For all of these reasons, Spence at least arguably rendered a deficient performance by failing to discover the disputed evidence. Accordingly, we shall assume arguendo that the performance was deficient and proceed to examine whether this prejudiced Cole.

2. Prejudice

Our reweighing of the evidence convinces us that Cole suffered no prejudice as a result of Spence's failure to procure and present the disputed mitigation evidence.  The evidence adduced by the State at the penalty phase was both qualitatively and quantitatively substantial.  It showed that the instant murder was both callous and calculated.  The senseless nature of this murder is consistent with Cole's prior crimes.

Cole was 31 years old when he murdered Richardson, and his own expert acknowledged that he was highly intelligent.  Thus, unlike some other capital defendants, Cole cannot blame his heinous acts on either youth or lack of intellectual capacity.  See Robertson v. Cockrell, 325 F.3d 243, 249 & n.5, n.6 (5th Cir.) (en banc), cert. denied, 124 S. Ct. 28 (2003).  Rather, the record can fairly be read as showing that Cole is a mature, bright man who consistently made conscious decisions to do what he wanted to do regardless of the consequences to others.  Conspicuously absent from the record is any indication that Cole has ever felt any remorse for his many crimes.  Also absent from the record is evidence concerning any positive character traits.  In sum, the State presented a powerful

13

case in support of its argument that there was a probability that Cole would continue to pose a risk of dangerousness.

In contrast, the mitigation evidence that Cole offered at trial, even when combined with the evidence that he now offers, simply is not sufficient to show a reasonable probability that a reasonable juror, when presented with all this evidence, would have declined to impose the death penalty. See Wiggins, 123 S. Ct. at 2537, 2542. As noted earlier, the records that Cole has produced are not wholly favorable. This evidence is thus "double-edged," as it is both aggravating and mitigating. See Ladd v. Cockrell, 311 F.3d 349, 360 (5th Cir. 2002). Cole thus has not shown prejudice based on Spence's failure to procure and present these records.

Neither can Cole show prejudice from Spence's failure to procure and present the testimony of Ted and Marsh. This evidence consists largely of vague and unsubstantiated allegations that Cole was abused and neglected by his parents and at the children's home. Cole certainly did not have an idyllic childhood, but the evidence that he now insists should have been presented simply does not rise to the level of that adduced in cases in which petitioners have received relief on similar claims. See Wiggins 123 S. Ct. at 2532-33; Williams v. Taylor, 529 U.S. 362, 390-98 (2000); Lewis v. Dretke, 355 F.3d 364, 367-69 (5th Cir. 2003).

There are no specific allegations of abuse at the children's home. There are inconsistencies between the affidavits as to the specifics of Charles's desertion of the family. There is a lack of

14

documentary evidence to support Cole's assertions of physical abuse, and even the abuse alleged does not rise to the level of that shown in other cases. There are no concrete allegations that Cole suffered sexual abuse. Cole was never removed from the family home because of abuse or neglect, and there is no indication that his parents faced criminal charges based on parental shortcomings.

In conclusion, Cole's evidence simply is not very strong, especially when compared with evidence produced in cases in which petitioners have prevailed on similar claims. When we add the omitted evidence to that adduced at trial and weigh the aggregate against the Respondent's overwhelming evidence of Cole's future dangerousness, we conclude that Cole's mitigating evidence is not "of sufficient quality and force to raise a reasonable probability that, had it been presented to the jury, a life sentence would have resulted." See Andrews v. Collins, 21 F.3d 612, 624 (5th Cir. 1994). Accordingly, even if this issue was not procedurally barred, Cole still would not prevail.

D. Smith Sixth Amendment Claim

Cole maintains that a harmful Sixth Amendment error resulted from the admission of Dr. Coons's testimony. He contends that this witness's opinion was particularly harmful to him both because Dr. Coons was the only medical doctor to testify and because the substance of his testimony strongly suggested that Cole would continue to be dangerous.

A psychiatric examination of a capital defendant that leads the expert to form an opinion as to the defendant's potential future dangerousness has constitutional implications. Smith, 451 U.S. at 461-71. Under these circumstances, the Sixth Amendment protects the defendant's right to have an effective consultation with counsel, which in turn requires that counsel be informed of the scope of the examination. Buchanan v. Kentucky, 483 U.S. 402, 424 (1987). Accordingly, if a capital defendant's attorney is not informed that a psychiatric examination will encompass future dangerousness, a Sixth Amendment violation can result from the admission of the expert's opinion on this topic. Powell v. Texas, 492 U.S. 680, 681-82, 686 (1989).

A Smith Sixth Amendment violation is, however, subject to harmless-error review. Satterwhite v. Texas, 486 U.S. 249, 258 (1988). The harmless-error standard of Brecht v. Abrahamson, 507 U.S. 619, 637 (1993), applies to Smith claims raised in § 2254 petitions. See Penry v. Johnson, 532 U.S. 782, 795 (2001) (Penry II). Under this standard, a petitioner will not receive relief unless he shows that the error complained of "had substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637, quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946). Finally, because the § 2254(d)(1) standard applies to this claim, Cole will not receive relief unless he shows that the state court's decision on this claim "involved an

16

unreasonable application of[] clearly established Federal law, as determined by the Supreme Court of the United States."

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. An unreasonable application differs from an incorrect application. Id. at 410-11. Accordingly, a habeas court may correct an erroneous application of law only if this application is also unreasonable. Id. at 411.

The parties do not dispute that Cole's trial attorney was unaware that Dr. Coons's examination could encompass future dangerousness, and the Respondent concedes that Cole's Sixth Amendment rights were violated by the admission of Dr. Coons's testimony. We note, however, that this issue is not clear, as Dr. Coons did not offer a direct opinion regarding Cole's future dangerousness. That is, Dr. Coons did not say whether he had formed the opinion that there was a probability that Cole would continue to pose a risk of danger in the future. Rather, Dr. Coons merely offered his opinions concerning various factors that could bear on that issue. The only direct future-dangerousness opinions offered at penalty phase came from Cole's own experts, and even they would not deny that he posed a risk of future dangerousness. The lack of a direct future-dangerousness opinion from Dr. Coons arguably supports a conclusion that there was no Sixth Amendment

17

error.  See Hernandez v. Johnson, 248 F.3d 344, 348 (5th Cir. 2001).

Even so, there is no need to resolve this issue.  If we assume arguendo that the admission of Dr. Coons's testimony resulted in a Sixth Amendment violation, Cole still is not entitled to relief, as he has not shown that the state court's decision on this claim "involved an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1); see also Neal, 286 F.3d at 246.

Dr. Coons testified that Cole had several sociopathic personality traits.  He based this opinion on the deliberate nature of the instant offense, the pecuniary motive behind the offense, Cole's criminal history, and Cole's lack of remorse.  He explained to the jury that sociopaths commit acts that society classifies as wrong simply because such persons want to; that they do not learn from their experiences; and that they do not feel remorse or guilt for their bad deeds.

The prosecutor asked Dr. Coons's opinion of the Cody passage and the pirate passage from Cole's diary.  Dr. Coons testified that the Cody passage showed a desire for homosexual pedophilia, accompanied with a knowledge that this behavior was wrong; and Dr. Coons described the pirate passage as the fantasy life of a sociopath, explaining that sociopath is a recognized psychological term.

18

Cole has not shown that the state court's decision on this issue was unreasonable. Cole's assertions about Dr. Coons's credentials, although accurate, are unavailing. He was the only medical doctor to testify, and the State made sure that the jury was aware of this fact. Wright and Dickerson, although not medical doctors, had similarly impressive credentials.

Cole's arguments concerning the substance of Dr. Coons's testimony are likewise unavailing, as a careful examination of the record shows that it is unlikely that this testimony "had substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637. When this testimony is viewed in the context of the record as a whole, it becomes apparent that much of Dr. Coons's testimony was redundant and that he did little more than label Cole's obviously abnormal behavior with the term "sociopath." Further, Dr. Coons's testimony spans approximately one-tenth of the State's penalty-phase case, and he cannot accurately be classed as the State's "star witness." Rather, he was only one of many whose testimony supports the jury's finding that Cole poses a risk of future dangerousness.

Accordingly, if the admission of Dr. Coons's testimony was error, it was harmless. The State's case for future dangerousness was amply supported by the facts of both the instant crime and Cole's past crimes, as well as by the testimony of Cole's own experts. Dr. Coons's testimony "was by no means the key to the

State's case on the question whether [Cole] was likely to commit future acts of violence." See <u>Penry II</u>, 532 U.S. at 795.

It thus is highly unlikely that the admission of this evidence "had a substantial and injurious effect on the verdict." <u>White v. Johnson</u>, 153 F.3d 197, 205 (5th Cir. 1998), citing <u>Brecht</u>, 507 U.S. at 537. The state courts' decision on this issue was not erroneous or objectively unreasonable. See <u>Neal</u>, 286 F.3d at 244-47. Cole has not shown that he should receive relief on this issue.

E. Motion for Reconsideration

Cole also asks us to reconsider our denial of COA on his <u>Penry I</u> claim based on the recent grants of certiorari in <u>Smith v. Dretke</u>, 124 S. Ct. 46 (2003), and <u>Tennard v. Dretke</u>, 124 S. Ct. 383 (2003), two cases from this circuit containing <u>Penry I</u> claims. He argues that these grants of certiorari call into question our analysis of his <u>Penry I</u> claim and that we should thus grant him a COA on this claim.

To the extent that Cole's motion may be construed as seeking panel reconsideration, it is untimely. We need not, however, resolve this issue because even assuming without granting that the motion should be entertained, it is unavailing.

Cole does not argue that our denial of COA on his <u>Penry I</u> claim was improper under our jurisprudence. Rather, he contends that the certiorari grants in <u>Tennard</u> and <u>Smith</u> render our jurisprudence questionable. "The Court's grant of certiorari in a capital case does not cause us to deviate from circuit law." <u>Cantu</u>

20

v. Collins, 967 F.2d 1006, 1012 n.10 (5th Cir. 1992).  Accordingly, the Court's recent actions in Tennard and Smith do not invalidate our original disposition of Cole's COA motion.  See Wicker v. McCotter, 798 F.2d 155, 157-58 (5th Cir. 1986).  We deny Cole's motion for reconsideration.

### III. Conclusion

Cole has not shown that he is entitled to habeas relief.  He has not shown cause and prejudice sufficient to overcome his state procedural default of his ineffective-assistance claim.  Furthermore, even if this claim were not defaulted, he still would not be entitled to relief on it, as he has failed to show that he suffered any prejudice as a result of the alleged deficiency in trial counsel's performance.

Neither has Cole shown that he is entitled to relief on his Sixth Amendment claim, as he has not shown harm in connection with the admission of Dr. Coons's testimony.  Consequently, Cole has failed to demonstrate that the state court's decision on this claim was objectively unreasonable.  As Cole has not shown that he should prevail on these issues, we affirm the district court's denial of Cole's § 2254 habeas corpus petition.

Finally, Cole's motion for reconsideration of the denial of a COA on his Penry I claim lacks merit:  Cole simply has not shown error in our previous denial of COA.  Cole's motion is denied.

DENIAL OF 28 U.S.C. § 2254 HABEAS CORPUS PETITION AFFIRMED; MOTION FOR RECONSIDERATION DENIED.

21