**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0105n.06

Case No. 19-1132

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

<table>
<tr><td>PAUL TORRES,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Petitioner-Appellant,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>ON APPEAL FROM THE</td></tr>
<tr><td>v.</td><td>)</td><td>UNITED STATES DISTRICT</td></tr>
<tr><td></td><td>)</td><td>COURT FOR THE EASTERN</td></tr>
<tr><td>DUNCAN MACLAREN, Warden,</td><td>)</td><td>DISTRICT OF MICHIGAN</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Respondent-Appellee.</td><td>)</td><td></td></tr>
</table>

**FILED**
Feb 14, 2020
DEBORAH S. HUNT, Clerk

**O P I N I O N**

BEFORE: GILMAN, McKEAGUE, and KETHLEDGE, Circuit Judges.

**McKEAGUE, Circuit Judge.** This habeas case comes down to a single factual question: is Paul Torres telling the truth about the advice his lawyer gave him? Torres was convicted in Michigan state court after a jury trial. Before the trial, his attorney received a plea offer. Under the terms of the offer, Torres would have pled guilty to one of the four charges he was facing, and the other three would have been dismissed. According to Torres, his trial lawyer told him to reject this offer because his sentences under the four charges would all run concurrently. In other words, whether he took the plea or lost at trial, Torres would be facing the same sentence. No extra risk, so no reward for taking the plea deal.

That advice would be wrong. In fact, by going to trial, Torres risked quite a bit. Under Michigan law, the trial court had the discretion to double his minimum sentence and run three of his sentences consecutively. And that's exactly what the court did here.

On federal habeas review, Torres argues that his trial attorney was ineffective for allegedly giving him this bad sentencing advice. The State agrees that, if the attorney did in fact give Torres this advice, then Torres has made out an ineffective-assistance-of-counsel claim.

So the only real question is this: did the lawyer actually give Torres this advice? The federal district court opened discovery, held an evidentiary hearing, and heard testimony, all for the purpose of answering this question. And the court concluded that no, the lawyer never did. To overturn that ruling, this court would need to find that the district court's credibility determination was clearly erroneous. We find no clear error, so we AFFIRM.

## I. BACKGROUND

### A. *Trial and Direct Appeal*

Back in October 2009, Paul Torres was convicted of four drug offenses. In May 2008, he sold cocaine to a police informant, twice. That led to two drug-delivery charges. Mich. Comp. Laws § 333.7401(2)(a)(iv). After the two drug deals, the police got a search warrant and searched Torres's house, where they found a digital scale, baggies with the corners ripped off, and cocaine. That led to two other charges: possessing cocaine with intent to deliver, Mich. Comp. Laws § 333.7401(2)(a)(iv), and maintaining a drug house, Mich. Comp. Laws § 333.7405(d).

Before trial, the prosecution twice presented Torres's lawyer, Asad Farah, with plea bargains, offering to drop three of the four charges in exchange for a guilty plea. But according to Torres, Farah told him to take his chances at trial. Torres claims that Farah told him that his sentences would definitely run concurrently, so he would receive the same amount of time

regardless of whether he pled guilty or was convicted at trial. Torres thereupon rejected the plea deal, rolled the dice, and went to trial.

He lost. A jury in Lenawee County convicted Torres of all four counts. Before he was sentenced, Torres met with a probation officer. The officer calculated Torres's guidelines range for the possession and delivery charges to be between 10 and 23 months.[1] But under Michigan law, the sentencing court had the discretion to double the guidelines range (because Torres was an admitted repeat offender, *see People v. Lowe*, 773 N.W.2d 1 (Mich. 2009)) and then run those three sentences consecutively, Mich. Comp. Laws § 333.7401(3); *People v. Davenport*, 522 N.W.2d 339, 340–41 (Mich. App. 1994) (per curiam). According to Torres, his meeting with the parole officer was the first time he ever heard about the possibility of guidelines-range doubling and consecutive sentencing for his charges. At the sentencing hearing, Farah recognized that the court *could* double Torres's guidelines range and run his sentences consecutively—he just tried to convince the court not to do it. But his attempt was unsuccessful: the court doubled the guidelines range and sentenced at the top of that doubled range. That comes out to 46 months minimum. Then the court ran the three sentences consecutively. Multiplying by three means Torres would be in prison for 138 months at a minimum.

Torres appealed. He was assigned an appellate lawyer, and the two had just one meeting. Importantly, there is conflicting evidence in the record about whether Torres brought up Farah's sentencing advice in his meeting with his appellate attorney. In an affidavit filed with the federal district court, Torres claimed that he brought up Farah's sentencing advice and asked his appellate attorney to raise it as an appeal issue. But in his testimony before the district court, Torres said he did not bring up the sentencing advice. Also, the appellate attorney's notes from the meeting do

---

[1] The minimum guidelines range for the drug-house count was 2 to 21 months, but that sentence ended up running concurrently.

not mention anything about Farah's sentencing advice. But the notes do mention two of the issues the appellate attorney ended up raising on appeal: the sentence, which was eventually challenged as an abuse of discretion, and sufficiency of the evidence, which the appellate attorney thought was a weak argument.

The final brief also challenged the jury instructions and argued that Farah was ineffective for failing to object to those instructions. It did not, however, raise Farah's sentencing advice as an issue. If Torres was unhappy about that, he could have filed a pro se supplemental brief—often referred to in Michigan as a "Standard Four brief," after Standard Four of the Minimum Standards for Indigent Criminal Appellate Defense Services. Torres claims that his appellate attorney never informed him that he had this right. But it's unclear what good informing him would have done, because Torres was inconsistent on whether he would have filed a brief if he had known about his right. In two affidavits, Torres claimed that, if he had known of his right to file a Standard Four brief, he would have filed one raising the sentencing-advice issue. But at a hearing before the federal district court, he said that even if he had known he could file a brief, he wouldn't have known what issues to raise because he didn't yet understand that he had a claim based on Farah's sentencing advice. Either way, Torres did not end up filing a Standard Four brief.

The Michigan Court of Appeals affirmed the verdict, and the Michigan Supreme Court denied leave to appeal. At no time during the direct appeal did Torres argue that Farah was ineffective for giving him incorrect advice about sentencing.

Farah, meanwhile, had problems of his own. He ran into trouble with the state disciplinary boards in Michigan and Ohio, the two states where he practiced. Shortly after Torres's trial, Farah received a one-year suspension in Ohio for neglect of his duty to a different client and failure to cooperate with the disciplinary investigation. He would later be disbarred in Michigan, and

indefinitely suspended in Ohio. In his deposition, Farah explained that he had felt disillusioned with the practice of law and had walked away from it.

### B. *State Collateral Review*

In June 2012, Torres filed a motion for relief from judgment. Mich. Court Rule 6.502. He raised several grounds for relief—most importantly, an ineffective-assistance-of-counsel claim based on "counsel's advice concerning sentencing exposure." The trial court denied Torres's motion. Although the court acknowledged that one of Torres's ineffective-assistance claims was about "advising him about an offered plea agreement," it went on to find that "the issue of ineffectiveness of trial counsel[] was raised by the Defendant in his appeal to the Court of Appeals and in his request for a hearing before the Michigan Supreme Court." And because the issue had already "been unsuccessfully appealed by the Defendant," the court saw "no additional grounds warranting relief from judgment."

The court was wrong. True, Torres had raised an ineffective-assistance claim on direct appeal. But that was for failing to object to jury instructions, not deficient advice on a plea agreement. Torres hadn't raised the latter claim before, so no court had decided it or even heard evidence on it. Nevertheless, the Michigan Court of Appeals and the Michigan Supreme Court affirmed the dismissal.

### C. *Federal Habeas Petition*

Then in June 2014, Torres filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Michigan. By now, he was raising only the ineffective-assistance claim based on Farah's sentencing advice. The district court denied the petition. It determined that the state court's decision, though wrong, was an adjudication "on the merits," and

thus 28 U.S.C. § 2254(d) applied. Accordingly, the court did not hear any additional evidence and applied deference to the state court's judgment.

This court reversed. We held that Torres's claim was never adjudicated "on the merits," as is required for deference under 28 U.S.C. § 2254(d). *Torres v. Bauman*, 677 F. App'x 300, 302 (6th Cir. 2017). We then remanded for reconsideration "without application of the deferential framework imposed by 28 U.S.C. § 2254(d)." *Id.* at 303.

### D. *District Court Decision*

After opening discovery and holding an evidentiary hearing, the district court denied Torres's habeas petition once again. The court was troubled by how late Torres raised this sentencing-advice issue and by inconsistencies in his sworn statements. For those reasons, the district court found Torres not to be credible. Torres filed a Rule 59(e) motion to alter the judgment, presenting the same basic argument as he does in this appeal. The district court denied Torres's Rule 59(e) motion. Torres then timely appealed. *See* Fed. R. App. P. 4(a)(1)(A); 4(a)(4)(A)(iv); *see also Howard v. United States*, 533 F.3d 472, 476 (6th Cir. 2008).

## II. ANALYSIS

### A. *Standard of Review*

"Where state courts do not reach the merits of a habeas petitioner's claim, federal habeas review is not subject to the deferential standards set out in the Antiterrorism and Effective Death Penalty Act of 1996." *Maslonka v. Hoffner*, 900 F.3d 269, 277 (6th Cir. 2018). "Instead, de novo review applies." *Id.* On appeal, the district court's legal conclusions are reviewed de novo and its factual findings are reviewed for clear error. *Id.* at 278.

The State does not challenge the district court's decision to open discovery and hold an evidentiary hearing. *See Robinson v. Howes*, 663 F.3d 819, 823–24 (6th Cir. 2011); *see also*

*Greenlaw v. United States*, 554 U.S. 237, 243–44 (2008). And it waived any statute-of-limitations, exhaustion, or procedural-default defenses. *See Wood v. Milyard*, 566 U.S. 463, 471–73 & n.5 (2012). Accordingly, our review here is narrow.

## B.  *Clear Error*

The district court found Torres not to be credible, so it did not believe that Farah gave him bad sentencing advice. This is a finding of fact that we can overturn only if it was clearly erroneous—meaning that, after reviewing all the evidence, we are "left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quotation omitted). If the district court's interpretation of the facts is "plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* at 574. And when the district court's factfinding is based on its conclusions about the credibility of a witness, its findings are due even greater deference. *Id.* at 575.

Moreover, a habeas petitioner "has the burden of establishing his right to federal habeas relief and of proving all facts necessary to show a constitutional violation." *Black v. Carpenter*, 866 F.3d 734, 744 (6th Cir. 2017) (quoting *Caver v. Straub*, 349 F.3d 340, 351 (6th Cir. 2003)). Accordingly, to overturn the district court, we would need to find that the district court committed clear error and that Torres had in fact carried his burden.

Here, the record evidence precludes a finding of clear error. In the course of his case, Torres was inconsistent in sworn statements to the court on important issues. First, Torres was inconsistent about filing a supplemental Standard Four brief. In June 2012, in his affidavit in state collateral proceedings, Torres claimed that, if he had known about his right to file a Standard Four brief, he would have done so and raised the ineffective-assistance claim based on Farah's

sentencing advice. But at the evidentiary hearing before the district court, Torres instead said that even if he had known he could file a Standard Four brief, he would not have known what issues to raise. Those can't both be true; either he knew what issues he would have raised or he didn't.

Second, Torres was inconsistent about whether he told his appellate attorney about Farah's sentencing advice. In his September 2017 affidavit filed with the federal district court, Torres claimed he told his appellate attorney about the sentencing advice he had received from Farah. But at the evidentiary hearing, Torres said he never specifically mentioned Farah's advice about the sentence, but instead discussed the sentence more broadly. Again, those can't both be true. These inconsistencies undermine Torres's credibility.

Even without the inconsistencies, there are parts of the record that support the district court's conclusion. For example, in his deposition, Farah said that he remembered that Torres was facing consecutive sentencing. He also remembered that in the county where Torres was charged, the prosecutors would often offer plea deals designed to avoid consecutive sentencing. And according to the prosecutor's affidavit, Farah was told that Torres faced possible consecutive sentencing if he did not take the plea deal. Still more, at the sentencing hearing, Farah argued that the court should not double Torres's guidelines range and run his sentences consecutively. But his argument was not that the court lacked the authority to do so; rather, it was that concurrent sentences "would still follow through on the Court's goal of punishment and rehabilitation." This additional evidence reinforces our conclusion that the district court did not clearly err in finding Torres not credible.

Torres emphasizes Farah's disciplinary problems and disbarments in Michigan and Ohio. But disciplinary proceedings in other cases do not necessarily establish that Farah was ineffective in this case. *See Young v. Runnels*, 435 F.3d 1038, 1043 (9th Cir. 2006); *Commonwealth v. Wilson*,

819 N.E.2d 919, 932 n.23 (Mass. 2004). More importantly, Torres's argument boils down to a general character attack: that Farah likely gave Torres the bad sentencing advice because he's a bad lawyer. This is not enough to render the district court's credibility finding clearly erroneous.

The case law also does not support a finding of clear error. Torres relies primarily on three cases. First, he cites *Smith v. United States* for the proposition that a movant's own account of events can be sufficient to grant postconviction relief. 348 F.3d 545 (6th Cir. 2003). There, in a 28 U.S.C. § 2255 case, this court reversed a district court's denial of an evidentiary hearing, concluding that the district court erred in rejecting the movant's "self-serving testimony." *Id.* at 551. Important to the *Smith* court's reasoning, claims Torres, was the lack of evidence in the record contradicting the movant's assertions about his attorney's allegedly deficient advice. *See id.* at 552–54. So too here, says Torres: nobody has contradicted his account of Farah's sentencing advice, so the court must grant his habeas petition.

A district court, however, is not required to accept the testimony of a witness merely because it is uncontradicted. *See* 9C *Charles A. Wright et al.*, *Federal Practice & Procedure* § 2586 (3d ed. 2019) ("The court need not accept even uncontradicted and unimpeached testimony if it is from an interested party or is inherently improbable."). Again, we afford great deference to the district court's credibility determinations. *Anderson*, 470 U.S. at 575. And here, Torres's credibility had been undermined by his own inconsistent statements, as well as other record evidence tending to call his story into question.

Moreover, Torres's account is not the whole story of *Smith*. Most importantly, the court in *Smith* did not grant the motion to vacate. It simply remanded for an evidentiary hearing. *Smith*, 348 F.3d at 554. After the remand, the district court held a hearing but still denied the motion, and this court affirmed. *Smith v. United States*, 169 F. App'x 451 (6th Cir. 2006) (per curiam). Also,

the problem in the first *Smith* appeal wasn't just that the district court discredited the movant's testimony as "self-serving." *Smith*, 348 F.3d at 551. The district court also required additional "objective evidence" on top of movant's testimony in order to corroborate the ineffective-assistance claim, and that requirement was incorrect as a matter of law. *Id.* Here, the district court did not impose any heightened evidentiary burdens on Torres. It simply didn't believe his story. And it does not follow from *Smith* that the district court *must* credit the petitioner's account if there is no account controverting it. The court can still find the petitioner not credible, just as it can so find for any other witness.

Next, Torres relies on an unpublished case, *Ceasor v. Ocwieja*, 655 F. App'x 263 (6th Cir. 2016). There, this court reversed a denial of habeas relief even though the petitioner had been inconsistent in some aspects of his story. *Id.* at 288, 290. But *Ceasor* is factually different. That case was about whether the petitioner's state-court trial lawyer should have presented an expert witness to rebut the prosecution's expert. *Id.* at 265; *see also id.* at 286. But in denying habeas relief, the district court focused on inconsistencies in the petitioner's story to the police, which had nothing to do with the expert-credibility issue that was the crux of the case. *Id.* at 288. Here, in contrast, Torres's case does not turn on expert testimony. The proceedings before the district court turned on Torres's credibility. And his inconsistencies go to the heart of his credibility on the key issue in the case. Thus, *Ceasor* is distinguishable.

Finally, Torres relies on the Fifth Circuit's decision in *Lewis v. Dretke*, 355 F.3d 364 (5th Cir. 2003) (per curiam), as an example of a court of appeals overturning a district court's finding of fact based on witness credibility. But there, the district court's credibility determination had far less support. The determination was based on merely one brief statement from one witness, who was "obviously straining to remember what had occurred." *Id.* at 367. And that statement was

contradicted by three other witnesses, whose testimony was "remarkably consistent" and corroborated by "abundant record evidence." *Id.* at 368–69. Though "reluctant," the court found this to be "one of those rare instances" in which it could overturn the finding. *Id.* at 368.

Ultimately, *Lewis* is distinguishable. There, the court was overturning a credibility finding based on the statements of three people—not just one, as would be the case here. More importantly, those three witnesses in *Lewis* were "remarkably consistent." And consistency was exactly Torres's problem before the district court. In conclusion, none of the cases cited by Torres nor any other cases of which we are aware establish that Torres is entitled to relief.

### III. CONCLUSION

Because we affirm the district court's credibility determination, there is no need to discuss whether, if the facts were as Torres described them, that would amount to an ineffective-assistance claim. Accordingly, we AFFIRM the judgment of the district court.