*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0387P (6th Cir.)
File Name: 03a0387p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

EDDIE D. SMITH,
    *Petitioner-Appellant,*

*v.*

No. 01-5215

UNITED STATES OF AMERICA,
    *Respondent-Appellee.*

———————————

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 99-00086—Karl S. Forester, Chief District Judge.

Argued: March 12, 2003

Decided and Filed: November 3, 2003

Before: MOORE and CLAY, Circuit Judges; LAWSON,
District Judge.*

———————————

## COUNSEL

**ARGUED:** Cheryl J. Sturm, Chadds Ford, Pennsylvania, for
Appellant. John Patrick Grant, ASSISTANT UNITED

---

    * The Honorable David M. Lawson, United States District Judge for
the Eastern District of Michigan, sitting by designation.

---

STATES ATTORNEY, Lexington, Kentucky, for Appellee.
**ON BRIEF:** Cheryl J. Sturm, Chadds Ford, Pennsylvania,
for Appellant. Charles P. Wisdom, Jr., ASSISTANT
UNITED STATES ATTORNEY, Lexington, Kentucky, for
Appellee.

———————————

## OPINION

———————————

    DAVID M. LAWSON, District Judge. The petitioner
appeals the denial of his motion to vacate sentence filed under
28 U.S.C. § 2255. He was convicted by a jury of several
counts of sexual misconduct perpetrated against female
inmates at a federal prison while he was employed at the
facility as a prison guard. He also was found guilty of lying
during a hearing into his misconduct before the Merit
Systems Protection Board. The principal ground for Smith's
motion is that his attorney was constitutionally ineffective
because he failed to properly advise and counsel Smith
concerning a pretrial guilty plea offer made by the
government that would have resulted in a sentence
considerably shorter than the 262 months Smith ultimately
received. We believe that the factual record before the district
court is not sufficient to properly adjudicate the motion. We
therefore vacate the lower court's judgment and remand for
an evidentiary hearing.

I.

    On April 20, 1995, a federal grand jury sitting in the
Eastern District of Kentucky returned a multi-count
indictment against petitioner Eddie D. Smith. A superseding
indictment was handed down on August 16, 1995, which
charged Smith with eight counts of sexual misconduct and
one count of perjury. Counts one through five alleged that
Smith engaged in sexual acts by force with four different
inmates while he was employed as a correctional officer at the

Federal Medical Center (FMC) in Lexington, Kentucky, all in violation of 18 U.S.C. § 2241(a)(1). Counts six and seven charged that Smith engaged in sex acts with one of the previously-named inmates while she was under his authority, contrary to 18 U.S.C. § 2243(b). Count eight alleged that Smith engaged in sexual contact with yet a different inmate while she was officially detained and under his supervision in violation of 18 U.S.C.§ 2244(a)(4). Finally, count nine alleged that, on or about January 12, 1994, Smith gave false material testimony under oath before United States Administrative Law Judge Jack E. Salyer, during a Merit Systems Protection Board proceeding concerning the removal of Smith from his position as a correctional officer at the Lexington Medical Center, contrary to 18 U.S.C. § 1621.

At his arraignment, Smith was represented by the same attorney that had appeared for him at the prior proceeding before the Merit Systems Protection Board in which Smith was removed from his job with the Bureau of Prisons on account of the same misconduct that led to his indictment. Smith contends, and the government does not dispute, that sometime before the indictment was returned, the prosecution offered to allow Smith to plead guilty to a one-count information charging perjury with a maximum recommended sentence of twenty months, in exchange for abandoning the prosecution of the sexual misconduct offenses. Smith did not accept that offer. About one month after his arraignment, his lawyer withdrew and attorney Andrew M. Stephens was appointed to represent Smith. Stephens avers that the guilty plea offer remained open until approximately ten days before trial.

Trial commenced on September 25, 1995. Smith testified on his own behalf, and maintained his innocence of the charges. However, the jury convicted Smith as charged on all counts but count seven, for which he was found not guilty. On March 8, 1996, Smith was sentenced to multiple terms of 262 months imprisonment on counts one, two, three and five, with thirty-six months of supervised release to follow; twelve

months imprisonment on count six, with three months of supervised release; six months imprisonment on count eight, with three years of supervised release; and sixty months imprisonment on count nine, with three years of supervised release. Count four was dismissed on the government's motion. The sentences were all to be served concurrently. We affirmed Smith's convictions on direct appeal on March 20, 1998 in an unpublished opinion. *United States v. Smith*, No. 96-5385, 1998 WL 136564 (6th Cir. Mar. 19, 1998).

On March 5, 1999, the petitioner filed a motion seeking to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. In the motion Smith alleges that defense counsel was ineffective for failing to advise him to accept the twenty-month guilty plea agreement offered by the government, and for failing to interview and call as a defense witness a FMC inmate who would have testified that the government's witnesses fabricated the stories about Smith. Smith further contended in the motion that his convictions violated the Fifth Amendment's prohibition against double jeopardy.

The government responded to the motion on April 20, 1999, attaching an affidavit of attorney Stephens. The affidavit states that Stephens' conversations with predecessor counsel indicated that Smith was aware, prior to the filing of the indictment, that an offer was on the table for a guilty plea to the perjury charge. Stephens Aff. at 1, J.A. at 69. The affidavit further states that "Mr. Smith had been fully active in participation of the pension denial hearings and his potential wrongful termination. It is also relevant to the undersigned that Mr. Smith's wife accompanied him on every office conference, discovery conference, and discovery investigation conference of which there were at least fifteen or twenty." *Ibid.* "At no time," Stephens insists, "during the course of lengthy investigations, review of literally reams of documents and travel between various Federal Correctional Institutions accomplished by the undersigned in investigation and defense of this case, did Mr. Smith ever consider the

entry of a guilty plea." Stephens Aff. at 2, J.A. at 70. The affidavit speculates that "Smith at some point was attempting to save face in front of his wife during the pendency of their marriage and thus, that maybe [sic] the motivation for his denial of any desire to entry [sic] a guilty plea." *Ibid.* Stephens also states, somewhat cryptically, that "[i]t would be incorrect for Mr. Smith to assert that their [sic] wasn't some talk of a guilty plea since the offer was made and held open by the United States until approximately ten days before trial." *Ibid.*

The evidence against Smith, Stephens insists, was overwhelming. He further states that he prepared with Smith more than he has with any other client. When the guilty plea offer was discussed, "it was discussed with disgust." Stephens Aff. at 4, J.A. at 72. There was no doubt in his mind, Stephens states, that Smith "never considered a plea though a plea was discussed." Stephens Aff. at 3-4, J.A. at 71-72. "[N]ever ever was undersigned counsel directed to explore negotiated plea offers even though same was made." Stephens Aff. at 3, J.A. at 71.

On March 28, 2000, Magistrate Judge James B. Todd filed a report recommending that the motion be denied. After considering the petitioner's exceptions to that report, and the government's response to those exceptions, the district court adopted the report in an Opinion and Order filed January 11, 2001. No evidentiary hearing was conducted in the lower court. The district court denied the motion on the ground that the petitioner had failed to show prejudice as required by *Strickland v. Washington*, 466 U.S. 668, 694 (1984), because there was no "objective evidence in the record demonstrating a reasonable probability that, but for his counsel's lack of advice, he would have accepted the government's offer." Opinion and Order at 3; J.A. at 112. The district court reasoned that Smith was aware of the government's offer and rejected it, and instead protested his innocence at trial (which resulted in a two-point offense level enhancement for obstruction of justice), and therefore it was unlikely that he

would have pleaded guilty even if he had received proper advice from his attorney. *Ibid.* The district court also rejected Smith's claim that Stephens was ineffective for failing to interview a witness, and that prosecuting Smith following the administrative job-removal proceedings violated the Double Jeopardy Clause.

The district court's judgment against the petitioner was timely appealed on February 5, 2001. The issues raised relate only to the question of whether Stephens' advice to Smith concerning the government's guilty plea offer was constitutionally adequate, and whether the district court erred by not conducting an evidentiary hearing to resolve that question.

II.

On appeal of the district court's denial of a motion to vacate, alter, or amend sentence pursuant to 28 U.S.C. § 2255, we review the lower court's legal conclusions *de novo* and its factual findings for clear error. *Nagi v. United States*, 90 F.3d 130, 134 (6th Cir. 1996). The district court's decision whether to hold an evidentiary hearing on a Section 2255 motion is reviewed under the abuse of discretion standard. *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999).

A prisoner who files a motion under Section 2255 challenging a federal conviction is entitled to "a prompt hearing" at which the district court is to "determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. The hearing is mandatory "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Fontaine v. United States*, 411 U.S. 213, 215 (1973) (citation omitted). *See also Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996) (holding that "evidentiary hearings are not required when . . . the record conclusively shows that the petitioner is entitled to no relief."). The statute "does not

require a full blown evidentiary hearing in every instance . . . . Rather, the hearing conducted by the court, if any, must be tailored to the specific needs of the case, with due regard for the origin and complexity of the issues of fact and the thoroughness of the record on which (or perhaps, against which) the section 2255 motion is made." *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993). Furthermore, "when the trial judge also hears the collateral proceedings . . . that judge may rely on his recollections of the trial in ruling on the collateral attack." *Blanton*, 94 F.3d at 235 (citing *Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977)). However, "[w]here there is a factual dispute, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999) (citing *Paprocki v. Foltz*, 869 F.2d 281, 287 (6th Cir.1989)). We have observed that a Section 2255 petitioner's burden "for establishing an entitlement to an evidentiary hearing is relatively light." *Id.* at 477.

Here, Smith seeks a hearing on the question of whether his attorney was constitutionally ineffective. Such claims are guided by the now familiar two-element test set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must prove that counsel's performance was deficient, which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The Court explained that to establish deficient performance, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id.* at 690. Second, a petitioner must show that counsel's deficient performance prejudiced the petitioner. A petitioner may establish prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.* at 687.

The Supreme Court has applied this test to evaluate the performance of attorneys representing guilty-pleading defendants, with special attention to the second element:

The second, or "prejudice," requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

In this case, the trial court summarily rejected Smith's ineffective assistance of counsel claim for failure of proof on this second element. The lower court found that a defendant's "own self-serving testimony" that he would have pleaded guilty if properly advised is not sufficient; in addition, the lower court required that the defendant also present "objective evidence" to establish prejudice. Opinion and Order at 3; J.A. at 112. However, we recently stated: "Although some circuits have held that a defendant must support his own assertion that he would have accepted the offer with additional objective evidence, we in this circuit have declined to adopt such a requirement." *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir 2003) (quoting *Dedvukovic v. Martin*, 36 Fed.Appx. 795, 798 (6th Cir.2002) (unpublished)).

The district judge in this case, who also presided over Smith's trial, found that Smith was aware of the plea offer, rejected it, and maintained his innocence throughout the proceedings, including to the point of testifying under oath at trial that he did not engage in the conduct described by his accusers, which earned him a two-point enhancement of his offense level for obstruction of justice at sentencing. This point was addressed in *Griffin* as well, where we observed that defendants may enter a guilty plea while maintaining innocence under *North Carolina v. Alford*, 400 U.S. 25, 33 (1970) (stating that "reasons other than the fact that he is guilty may induce a defendant to so plead . . . and he must be permitted to judge for himself in this respect"); many

defendants believe that they must maintain innocence right up to the point of pleading guilty in order to fortify their bargaining positions; and the Fifth Amendment gives defendants the right to assert their innocence throughout a trial. *Griffin*, 330 F.3d at 738. We concluded, therefore, that it "does not make sense to say that a defendant's protestations of innocence belie his later claim that he would have accepted a guilty plea. . . . These declarations of innocence are . . . not dispositive on the question." *Ibid.* Protestations of innocence throughout trial are properly a factor in the trial court's analysis, however they do not, by themselves, justify summary denial of relief without an evidentiary hearing. *See Cullen v. United States*, 194 F.3d 401, 404-07 (2d Cir. 1999).

In *Griffin*, there was no dispute over the fact that the petitioner's trial counsel failed to convey a pretrial guilty plea offer, and that the petitioner proceeded to trial, where he testified that he was innocent. The panel noted that the substantial disparity between the five-year sentence offered by the government and the 156 months Griffin ultimately received was enough to warrant further exploration of the issue at an evidentiary hearing of the question of the reasonable likelihood that Griffin, competently advised, would have pleaded guilty. *Griffin*, 330 F.3d at 739. Other panels in this and other circuits have pointed to the disparity between the plea offer and the potential sentence exposure as strong evidence of a reasonable probability that a properly advised defendant would have accepted a guilty plea offer, despite earlier protestations of innocence. *See Magana v. Hofbauer*, 263 F.3d 542, 552-53 (6th Cir. 2001) (finding the difference between a ten- and twenty-year sentence significant); *United States v. Day*, 969 F.2d 39 (3d Cir. 1992) (finding ineffective assistance of counsel when trial counsel mistakenly described the penalties at trial as ten years rather than the twenty-two years the defendant received at sentencing, and where a plea offer of five years had been made); *United States v. Gordon*, 156 F.3d 376, 377-81 (2d Cir. 1998) (holding that the wide disparity between the ten-year sentence recommended by the plea agreement and the

seventeen-and-a-half years the defendant did receive was objective evidence that a plea would have been accepted).

In this case, the petitioner concedes that he was aware of the government's guilty plea offer. However, citing *Boria v. Keane*, 99 F.3d 492 (2d Cir. 1996), Smith contends that his attorney was ineffective because, in light of the overwhelming evidence of guilt, the attorney did not insist that Smith plead guilty and accept the twenty-month plea bargain. We do not believe this to be a proper basis upon which to find deficient performance by defense counsel. The decision to plead guilty – first, last, and always – rests with the defendant, not his lawyer. Although the attorney may provide an opinion on the strength of the government's case, the likelihood of a successful defense, and the wisdom of a chosen course of action, the ultimate decision of whether to go to trial must be made by the person who will bear the ultimate consequence of a conviction.

On the other hand, the attorney has a clear obligation to fully inform her client of the available options. We have held that the failure to convey a plea offer constitutes ineffective assistance, *see Griffin*, 330 F.3d at 734, but in the context of the modern criminal justice system, which is driven largely by the Sentencing Guidelines, more is required. A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available. In a system dominated by sentencing guidelines, we do not see how sentence exposure can be fully explained without completely exploring the ranges of penalties under likely guideline scoring scenarios, given the information available to the defendant and his lawyer at the time. *See United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992) (observing that "the Sentencing Guidelines have become a critical, and in many cases, dominant facet of federal criminal proceedings" such

that "familiarity with the structure and basic content of the Guidelines (including the definition and implications of career offender status) has become a necessity for counsel who seek to give effective representation."). The criminal defendant has a right to this information, just as he is entitled to the benefit of his attorney's superior experience and training in the criminal law.

The record in this case leaves us in considerable doubt over the nature and quality of the advice Smith received before he made his final decision to reject the government's proposed plea bargain. Attorney Stephens' affidavit states that Smith was aware of a plea offer, and that Smith was predisposed against a plea to save face in front of his wife, but it does not state that Stephens actually discussed the terms of the plea agreement with Smith. More importantly, the affidavit does not state that Stephens informed Smith of the dramatically higher sentence potential (over ten times as much incarceration) to which Smith was exposed if he were convicted of even one of many charges. The affidavit does not claim that Stephens at any time expressed to Smith how unlikely he was to prevail at trial.

Stephens stated in his affidavit that Smith "knew by virtue of letters sent from [Stephens] to him possibility [sic] of the steep sentence which he ultimately got." Stephens Aff., J.A. at 71. However, the only such correspondence in the record came from Stephens *after* the trial. In his October 17, 1995 letter, Stephens wrote to Smith: "I wanted to formally advise you of what I believe the relevant sentencing guideline provisions are and to confirm with you the substance of my meeting with [the probation officer] and to give you your various options at this point." Letter of Oct. 17, 1995 from Stephens to Smith, J.A. at 105. There is no reference in the letter to earlier conversations or to pretrial discussions of the sentencing potential in the case. There is no other evidence that Smith's sentencing exposure upon conviction of the charges in the superseding indictment – information that, in

our view, was necessary for a proper consideration of the guilty plea offer – was ever conveyed to Smith before trial.

The failure of defense counsel to "provide professional guidance to a defendant regarding his sentence exposure prior to a plea may constitute deficient assistance." *Moss v. United States*, 323 F.3d 445, 474 (6th Cir. 2003). *See also Magana*, 263 F.3d at 550 (holding that the defense counsel's erroneous advice concerning sentence exposure "fell below an objective standard of reasonableness under prevailing professional norms"); *Day*, 969 F.2d at 43 (holding that incorrect advice about sentence exposure as a potential career offender undermined the defendant's ability to make an intelligent decision about whether to accept a plea offer). Whether the petitioner had this information before he rejected the plea offer is also an important factor in the consideration of the reasonable likelihood that a properly counseled defendant would have accepted the government's guilty plea offer.

Smith should have been given the opportunity at an evidentiary hearing to develop a record on these factual issues in the lower court.

### III.

The petitioner asks that the matter be remanded to a different judge to preserve the appearance of fairness. Although we have the authority to grant that request under 28 U.S.C. § 2106, it is an "extraordinary power and should be rarely invoked." *Armco, Inc. v. United Steelworkers of America, AFL-CIO, Local 169*, 280 F.3d 669, 683 (6th Cir. 2002) (citation omitted). The factors that we consider are "(1) whether the original judge would reasonably be expected to have substantial difficulty in putting out of his mind previously expressed views or findings; (2) whether reassignment is advisable to preserve the appearance of justice; and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness." *Sagan v. United States*, 342 F.3d

493, 501 (6th Cir. 2003) (citations omitted). *See also Brown v. Crowley*, 312 F.3d 782, 791-92 (6th Cir. 2002).

None of these factors support the request to remand this case to a different district court judge. The record contains no evidence that the district court judge would have difficulty considering the case on remand in an objective manner. In fact, he is probably in a superior position to evaluate the claims, since he presided over Smith's criminal trial. His familiarity with the case is no evidence of a lack of propriety or fairness, since, as we observed earlier, the habeas judge may rely on his or her memory of the trial when relevant to the issues on collateral review. *See Blanton*, 94 F.3d at 235. To require a different district court judge to become familiar with the factual and procedural history of this case would waste judicial resources.

For the foregoing reasons, we **VACATE** the judgment of the district court denying the petitioner's motion to vacate his sentence under 28 U.S.C. § 2255, and **REMAND** to the district court for an evidentiary hearing.