NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0792n.06

Case No. 11-2230

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Aug 28, 2013*
DEBORAH S. HUNT, Clerk

KATHLEEN DOCHERTY,                          )
                                            )
        Petitioner-Appellant,               )
                                            )
                                            )        ON APPEAL FROM THE
        v.                                  )        UNITED STATES DISTRICT
                                            )        COURT FOR THE EASTERN
UNITED STATES OF AMERICA,                   )        DISTRICT OF MICHIGAN
                                            )
        Respondent-Appellee.                )
                                            )
_____    )

BEFORE:  BATCHELDER, Chief Judge; SUHRHEINRICH and SUTTON, Circuit Judges.

ALICE M. BATCHELDER, Chief Judge.   Defendant-Appellant Kathleen Docherty

appeals the district court's denial of her petition for a writ of habeas corpus under 28 U.S.C. § 2255.

She claims she received ineffective assistance of counsel in relation to federal drug charges.  The

district court rejected her petition without a certificate of appealability ("COA"), but this Court

granted a COA on whether she received ineffective assistance during plea negotiations and a post-

plea debriefing with the government.  For the reasons that follow, we AFFIRM.

I.

This is the third time Docherty's case comes before this Court.  The story began with

Docherty's facing state drug charges in June 2002.  Wright Blake (who later represented Docherty's

boss, the drug conspiracy ringleader Joseph Jeross) represented Docherty in the state charges, which

were ultimately dropped in December 2002.  Docherty was arrested on federal drug charges in

1

August 2002 on the basis of an initial federal complaint (the "August complaint"). The affidavit of a Customs agent, which accompanied the August complaint, reported that Docherty and initial co-defendants Adam Donald and Thomas Leto were involved in selling ecstasy. Docherty claims she wanted to cooperate with investigators and that she said so after her arrest, but that she also told the police that first, she wanted to speak to her attorney, Blake.

Docherty did speak with Blake, but she did not cooperate afterward. She explained that, after her August arrest, she called Blake to ask him to represent her in the federal case; that she told Blake that Jeross would need representation; that she met with Blake to discuss the federal case; and that Blake counseled her not to cooperate with the United States as a witness against the other defendants, but then said he would not be representing her because he had decided to represent Jeross.

Blake claims that he did not represent Docherty at all in the federal case. But that statement contradicts his testimony from a disciplinary hearing (held regarding one of Docherty's subsequent attorneys). And, in a Federal Rule of Criminal Procedure 44 motion, the United States alleged that Blake had contacted the United States and said that he would be representing Docherty with regard to the August complaint. Docherty and Jeross claim that Jeross paid Blake a large sum for both Docherty and Jeross, a payment Blake denies.

The district court dismissed without prejudice the August complaint, but in December 2002 another indictment for ecstasy sales was handed down (the "December indictment"), this time including Jeross, Docherty, Leto, and Donald. Byron Pitts now represented Docherty. Leto, a drug

2

courier and one of Docherty's co-conspirators, cooperated with the government and signed a Rule 11 plea agreement on March 7, 2003. He described Docherty's role in the conspiracy:

> Docherty handled the transactions with individual distributor-sellers. She received the drugs from Canada, permitted the pills to be repackaged for distribution in her home, doled out the repackaged pills to four or five distributors whom she "regulated," kept detailed transactional and financial records, collected the profits that the distributors returned to her, and, finally, passed the profits along to Jeross.

*United States v. Jeross*, 521 F.3d 562, 580 (6th Cir. 2008). At times, Docherty managed Leto and collected profits from his sales. *Id.*

The United States also made a Rule 11 plea offer to Docherty in early March 2003 that Docherty did not accept. She claims she was never told of and never saw the offer, a point that Pitts disputes. She pleaded guilty without a Rule 11 agreement:

> In April of 2003, Joseph Jeross and Kathleen Docherty pled guilty to, and were later sentenced for, their roles in a Detroit-based conspiracy to possess and distribute at least 100,000 Ecstacy pills. Jeross was sentenced to 270 months in prison and Docherty was sentenced to 188 months in prison. Their sentences were later vacated and remanded by this court following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). On remand, the district court imposed the same sentences . . . .

*Jeross*, 521 F.3d at 567. This Court affirmed Docherty's post-*Booker* resentencing in 2008. *Id.*

Just a few moments before Docherty pleaded guilty during the April 2003 plea hearing, the district court judge addressed a motion the United States had filed under Federal Rule of Criminal Procedure 44, asking for a hearing on conflicts of interest. The motion suggested conflicts of interest because Pitts and Blake shared an office, because Blake had previously represented Docherty in the same matter, and because Blake appeared to be continuing to represent Docherty in forfeiture proceedings. The judge made a few inquiries about the relationship between Blake and Pitts,

explaining that he had been told that Blake and Pitts shared an office, but not finances. When the judge asked whether Docherty had "any difficulty with the fact that Mr. Blake and Mr. Pitts share office space and that their agreement for representation is separate as to" Docherty and Jeross, Docherty said "I'm fine with that." In response to the AUSA's asking "Mr. Jeross and Ms. Docherty, do you waive any such conflicts if one does exist?" Docherty and Jeross both said "yes."

After Docherty pleaded guilty, the United States arranged to have her debriefed. Pitts directed Docherty to the room where the debriefing was to occur, but then left. The United States eventually stopped the meeting because Docherty contradicted herself, hurt her case through what she said, and provided no useful information.

After the Sixth Circuit's 2008 affirmance of Docherty's resentencing, Docherty moved the district court to vacate her sentence under 28 U.S.C. § 2255 and to give her an evidentiary hearing because she had received ineffective assistance of counsel due to Blake's and Pitts's conflicts of interest. The district court ordered the parties to expand the record as it related to Docherty's motion, but then denied Docherty's § 2255 motion and granted no COA.

Docherty moved this Court for a certificate of appealability. We denied the motion with respect to Docherty's conflict of interest claims because the district court made an adequate inquiry and because Docherty had voluntarily waived the conflict. But we granted a COA on two issues: "(1) whether counsel's performance was constitutionally ineffective during plea negotiations and Docherty's debriefing with the government; and (2) whether the district court should have held an

evidentiary hearing on Docherty's claims that counsel performed ineffectively during plea negotiations and her debriefing with the government."

Now, the main part of Docherty's ineffective assistance claim is that Blake and Pitts delayed and discouraged her from cooperating with the United States. She also claims Pitts never told her of a Rule 11 plea offer, and she challenges Pitts's leaving her during a post-plea debriefing.

## II.

On appeal of the district court's denial of a motion to vacate a sentence pursuant to 28 U.S.C. § 2255, we review the lower court's legal conclusions de novo and its factual findings for clear error. *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003). "Clear error occurs only when we are left with the definite and firm conviction that a mistake has been committed." *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003) (internal quotation marks omitted).

We review for abuse of discretion a district court's refusal to conduct a § 2255 evidentiary hearing. *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999). Though "[a] prisoner who files a motion under Section 2255 challenging a federal conviction is entitled to a prompt hearing," *Smith*, 348 F.3d at 550 (internal quotation marks omitted), no hearing is required if the petitioner's claims cannot be accepted as true because the record contradicts them, they are inherently incredible, or they are legal conclusions rather than statements of fact. *See Arredondo*, 178 F.3d at 782.

## A.

Docherty claims she received ineffective assistance of counsel when her attorneys delayed and discouraged her cooperating with the United States. To succeed on an ineffective assistance

claim, a defendant must show that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Our review of counsel's performance is "highly deferential." *Id.* at 689. We "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. The defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* To establish "prejudice," a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. , 131 S. Ct. 770, 792 (2011). And, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697.

Docherty seeks to show prejudice through Leto's receiving a lower sentence than she did. The idea is that, had Docherty cooperated sooner, she might have obtained a deal more like Leto's. But the comparison is inapt. It is true that Leto cooperated, that he had a Rule 11 agreement, that the United States moved for a USSG § 5K1.1 downward departure, and that Leto received less prison time (35 months) than Docherty. But and contrary to Docherty's claim that she and Leto were of "similar culpability" Leto played a small role in the conspiracy. By contrast, Docherty took a weekly salary from Jeross for her managing drug distribution, and in her home drugs were deposited, repackaged, and distributed. She collected distributors' profits and returned them to Jeross.

Docherty, unlike Leto, was a manager and supervisor of criminal activity involving five or more participants and, accordingly, she received a higher sentence.

Nor has Docherty shown a substantial likelihood that a different result would have followed from her cooperating sooner. In fact, when Docherty debriefed with the United States, the prosecutor took the unusual step of ending the meeting early because he found Docherty's statements incredible and contradictory. He ended the meeting prematurely as a matter of conscience because "it was obvious that [Docherty] was doing a disservice to herself by being there." We find that Docherty did not demonstrate prejudice and that the district court did not abuse its discretion by denying her an evidentiary hearing.[1]

**B.**

Docherty claims Pitts did not tell her that the government had made a Rule 11 plea offer. A defendant who has been offered a plea deal has a Sixth Amendment right to effective representation during plea negotiations. *See Padilla v. Kentucky*, 559 U.S.    , 130 S. Ct. 1473, 1486 (2010). In *Missouri v. Frye*, 566 U.S.    , 132 S. Ct. 1399, 1408 (2012), the Court held that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Id.* To show prejudice, "defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Id.* at 1409.

---

[1] Though Docherty has not established prejudice, we find Wright Blake's actions (if true) very troubling. In August 2002, after Blake had already decided to represent Jeross in the federal case that Jeross anticipated and that materialized in the December indictment, Blake allegedly counseled Docherty not to cooperate. This advice could have helped Jeross at Docherty's expense. The possibility of Blake's giving such advice during his representation of Docherty and Jeross is unacceptable, and illustrates a peril of joint representation. *See Moss*, 323 F.3d at 455 56.

Even if Pitts never communicated the offer to Docherty,[2] Docherty has not shown prejudice because she has not shown a "reasonable probability" that she would have accepted the offer. Docherty characterizes the offer as a "no-value" plea agreement, and says that it offered her "nothing." The gist of her case on appeal is not that Pitts failed to communicate an acceptable offer, but that her attorneys' discouraging her from cooperating kept her from obtaining an attractive offer in the first place. Docherty's characterization of the offer prevents her demonstrating a reasonable probability that she would have accepted the offer earlier. Because Docherty has not shown prejudice, we hold that the district court did not abuse its discretion by denying an evidentiary hearing.

## C.

Docherty argues that Pitts's leaving her during the post-plea debriefing was ineffective assistance. Pitts accompanied Docherty to the debriefing room, then left after ensuring that she would be immunized (pursuant to the United States's *Kastigar* letter). We need only address whether this actually prejudiced Docherty's defense. *See Strickland*, 466 U.S. at 697; *see also Wingo v. United States*, 341 F. App'x 132, 134-35 (6th Cir. 2009) (finding that once the defendant, with advice of counsel, signed a *Kastigar* letter, subsequent debriefings were not adversarial proceedings and the defendant needed to show actual prejudice from counsel's absence). We examine whether Docherty has shown a reasonable probability that, but for Pitts's leaving, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694.

---

[2]Whether Pitts told Docherty of the offer is unclear. Pitts says he did, and that he advised Docherty of all her options; he claims she was not interested in cooperating.

Here, Docherty has not shown prejudice. The United States ended the debriefing because Docherty provided useless information and contradicted herself. The AUSA present at the meeting said:

> We terminated the meeting, which is unusual. This - - it's to the government's benefit to sit down and let a defendant just talk as long as they want. We out of conscience terminated the meeting because it was obvious that she was doing a disservice to herself by being there.
>
> In the course of the meeting, she did not even admit to the - - to - - she was more than minimizing her role in this conspiracy. By inadvertence, she was telling us information that was inconsistent with facts we separately knew to be proved and even facts that she herself had come into the court and under oath admitted to having committed - - conducted in - - in terms of number of transactions.
>
> Yes, she came in and met with us. We terminated the meeting, and as the Court knows, we have not offered a 5(k) for her because she did not provide any substantial assistance to the government.

Docherty had nothing to offer other than what reduced her credibility. We have no reason to believe that Pitts's presence would have changed that. Indeed, under Docherty's own theory that Pitts discouraged her from cooperating it is hard to see how Pitts's presence would have helped her. We find that the district court did not abuse its discretion by denying an evidentiary hearing and that it correctly denied Docherty's petition.

### III.

For the foregoing reasons, we **AFFIRM** the district court's denial of Docherty's petition.