NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0250n.06

**No. 11-3914**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Apr 01, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| MARVIN MILLER, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE |
| | ) | NORTHERN DISTRICT OF |
| UNITED STATES OF AMERICA, | ) | OHIO |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |

BEFORE:  CLAY, ROGERS, Circuit Judges; and LUDINGTON, District Judge.[*]

LUDINGTON, District Judge. Petitioner Marvin Miller was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).  The district court found that Miller had three previous convictions for violent felony offenses and was therefore subject to the mandatory sentence enhancement under the Armed Career Criminal Act ("ACCA").  The district court sentenced Miller to the ACCA's 180-month statutory minimum.

Following his unsuccessful direct appeal, Miller filed a 28 U.S.C. § 2255 petition to vacate his sentence, which the district court denied.  The district court also denied Miller's pro se motion to amend his § 2255 petition to include an additional claim for ineffective assistance of counsel.

On appeal, Miller asserted that his sentencing counsel was ineffective for (1) failing to argue

_____

[*]The Honorable Thomas L. Ludington, United States District Judge for the Eastern District of Michigan, sitting by designation.

that Miller's 1990 juvenile conviction does not qualify as a predicate violent felony under the ACCA and (2) failing to object to the district court's reliance on evidentiary hearings rather than *Shepard* documents to make that determination. Miller also challenges the district court's denial of his motion to amend, which would have permitted him to advance an additional claim: that he rejected a favorable plea agreement that the government was willing to offer because counsel advised him that the ACCA's mandatory sentence enhancement would not apply if he proceeded to trial and lost. For the following reasons, we uphold the district court's denial of Miller's ineffective assistance of counsel claims in part but **REMAND** one ineffective assistance claim to the district court for an evidentiary hearing.

## I

The facts underlying Miller's conviction as a felon in possession of a firearm are both simple and undisputed. On September 7, 2007, police officers executed a search warrant at Bella's Gentlemen's Club in Toledo, Ohio. Officers observed Miller reach into his waistband, remove a handgun, and throw it near a table on the club patio. After officers arrested Miller as he tried to climb over the club's fence, they recovered the handgun from underneath the table.

## A

On November 30, 2007, Miller was arraigned in federal district court. Counsel was appointed to represent Miller, who entered a plea of not guilty. The district court conducted a bench trial on April 30, 2008, and found Miller guilty of being a felon in possession of a firearm.

At sentencing, Miller's presentence report ("PSR") classified him as an armed career criminal under the ACCA. The PSR explained that Miller's record contained three previous violent

felonies: involuntary manslaughter with a firearm specification, attempted felonious assault, and felonious assault. The conviction for felonious assault was a juvenile adjudication, and the district court requested supplemental briefing on whether the juvenile adjudication could be used for the sentence enhancement under the ACCA. After two evidentiary hearings, the district court concluded that the juvenile conviction comported with due process and therefore qualified as a predicate violent felony. Miller thus had three prior qualifying felonies under the ACCA, and he received the minimum sentence—180 months' imprisonment.

On direct appeal, Miller challenged the district court's conclusion that the 1990 juvenile conviction was "procedurally sound" as required by due process. On April 7, 2010, we affirmed the district court's decision, concluding that the prior juvenile adjudication for felonious assault qualified as a predicate offense for the mandatory enhancement of Miller's sentence under the ACCA. *United States v. Miller*, 371 F. App'x 646, 654 (6th Cir. 2010) ("We agree with the district court that the 1990 juvenile proceeding sufficiently comported with due process to count as a predicate offense for purposes of the Armed Career Criminal Act.").

**B**

On April 26, 2011, Miller filed a pro se § 2255 petition to vacate in the district court, alleging that his attorney was ineffective because: (1) she failed to investigate Miller's prior convictions, resulting in his classification as an armed career criminal subject to a 180-month mandatory minimum sentence; (2) she misinformed Miller that she would file a motion to dismiss, and this was the reason Miller agreed to a bench trial instead of a jury trial; and (3) at sentencing, she "simply let the federal government and the court 'make phone-calls' in order to determine this

petitioner was qualified as an armed career criminal—which isn't a matter of law." Pet'r's Mot. Under 28 USC § 2255, at 7, *Miller v. United States*, No. 11-00820 (Apr. 26, 2011), R.I. 1.

About three months later, on July 27, 2011, Miller filed a Rule 15(d) motion for leave to supplement his § 2255 petition "to perfect an otherwise imperfected § 2255 prepared without the benefit of [all] transcripts needed in which to prepare a meaningful post-conviction proceeding."[1] The next day, the district court denied Miller's § 2255 petition and his motion to supplement the petition. Miller appealed the district court's decision denying his § 2255 petition, and this Court granted a partial certificate of appealability limited to Miller's claims that sentencing counsel provided ineffective assistance.

On May 9, 2012, Miller—proceeding pro se— filed an appellant brief challenging the district court's denial of his petition for habeas corpus. His brief asserted a single claim: that his trial counsel was ineffective for failing to investigate whether his prior convictions would result in a sentence enhancement under the ACCA. Following a round of briefing, Miller filed a motion for appointment of counsel on July 9, 2012. Miller then filed a supplemental pro se brief on October 12, 2012, that sought review of the district court's denial of his motion to supplement his original habeas petition.

On March 7, 2013, we granted Miller's motion for appointment of counsel and appointed

---

[1]Miller could have filed a Rule 15(a) motion, which allows habeas petitioners to amend their petition "under the liberal standards of Civil Rule 15." *Randy Hertz et al. Federal Habeas Corpus Practice and Procedure* 730 (4th ed. 2001). Rule 15(d), in contrast, allows a party to "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Because Miller was proceeding pro se when he filed his motion to amend, and because the arguments he made in his motion apply to Rule 15(a), the Court will overlook this technical defect and treat Miller's motion as if it had been filed under the proper section of the rule.

an attorney to represent him on appeal.      Before Miller's appointed counsel filed any briefs, Miller filed a pro se motion requesting a different attorney because counsel would not put forth the argument from his pro se supplemental brief.  After we denied Miller's request to remove his appointed counsel, Miller retained a private attorney.

Miller's retained counsel then filed a brief asserting that Miller was denied effective assistance when his trial counsel failed to investigate his prior convictions—the same argument Miller asserted in his pro se appellant brief.  Miller's counsel did not, however, argue the issue Miller advanced in his supplemental pro se brief: that the district court erred when it denied Miller leave to amend his habeas petition.

## II

Parties have the right to plead and conduct their own cases in federal courts.  28 U.S.C. § 1654.  However, "courts enjoy broad discretion to determine who shall practice before them." *United States v. Dinitz*, 538 F.2d 1214, 1219 (5th Cir. 1976).

Sixth Circuit caselaw is clear that a criminal defendant does not have a constitutional right to "hybrid representation."  *United States v. Mosely*, 810 F.2d 93, 98 (6th Cir. 1987).  A defendant has a constitutional right to be represented by counsel *or* to represent himself during his criminal proceedings, but not both. *Id*. at 97 (citing *Faretta v. California*, 422 U.S. 806 (1975)).  The Sixth Circuit explained: "The right to defend *pro se* and the right to counsel have been aptly described as two faces of the same coin, in that waiver of one constitutes a correlative assertion of the other." *Id*. at 97–98 (quoting *United States v. Conder*, 423 F.2d 904, 908 (6th Cir. 1970)) (internal quotation marks omitted).  Hybrid representation is generally prohibited because it increases the risk of undue

delay, jury confusion, and conflicts as to trial strategy. *Id*. at 98. When counsel has "performed in a highly competent and professional manner" and the defendant has been "given ample time to consult with his counsel over strategy," it is not an abuse of a court's discretion to prohibit hybrid representation. *Id*.

A habeas petitioner has neither a constitutional right nor a statutory right to hybrid representation. *See* 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases *personally or by counsel . . . .*") (emphasis added). However, because a court has broad discretion to determine who practices before it, a court may consider a pro se petition even when a habeas petitioner is represented by counsel. Here, the issue presented in Miller's pro se supplemental brief, that the district court erred in denying him leave to amend his habeas petition, appears to have merit. Therefore, we will, in our discretion, consider Miller's pro se arguments despite the fact that he is represented by counsel on appeal.

**III**

Miller filed his supplemental pro se brief challenging the district court's denial of his motion to supplement his § 2255 petition on October 12, 2012. Miller had attempted to include an additional argument to his original § 2255 petition: that his sentencing counsel was ineffective for failing to inform him that he would be subject to a mandatory sentence enhancement if he was convicted at trial. Miller asserts that, had he known, he would have elected to plead guilty rather than proceed to trial.

We review a district court's denial of a motion for leave to amend for an abuse of discretion. *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995) (citing *Foman v. Davis*, 371 U.S. 178, 182

(1962)). "Under Fed. R. Civ. P. 15(a), a district court should freely grant leave to amend when justice so requires," so long as the motion is not "brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Piner v. United States*, No. 97-1304, 1999 WL 454708, at *1 (6th Cir. June 21, 1999) (citing *Crawford*, 53 F.3d at 753). In *Piner*, we concluded that the district court had abused its discretion in refusing to allow the petitioner to amend his § 2255 petition because "the court gave no reason for its decision," Piner's "counsel was appointed only recently," and "he did not have a prior opportunity to raise the claim." *Id*. at *1. We noted that "no evidence exists that Piner's argument was made in bad faith," and "it does not appear that the government would have been prejudiced by an amendment." *Id*. These same reasons for finding abuse of discretion in *Piner* exist in the present case: the district court did not provide any reason for denying Miller's motion to amend; Miller was proceeding pro se when he filed the motion; Miller did not raise the claim earlier because at that time he did not have the transcripts he "needed . . . to prepare a meaningful post-conviction petition"; there is no evidence Miller acted in bad faith; and the district court did not assess whether the amendment would prejudice the government. Therefore, the district court abused its discretion in refusing to allow Miller to supplement his § 2255 petition. As a result, we will consider the merits of the argument Miller attempted to provide in his supplemental brief: that trial counsel was ineffective for failing to inform him that he faced a mandatory sentencing enhancement if he were convicted at trial.

**IV**

A district court's decision denying a § 2255 motion is reviewed de novo, while a district court's factual findings are reviewed for clear error. *Hamblen v. United States*, 591 F.3d 471, 473 (6th Cir. 2009). Ineffective assistance of counsel claims are mixed questions of law and fact, which are reviewed de novo on appeal. *Strickland v. Washington*, 466 U.S. 668, 698 (1984); *United States v. Pierce*, 62 F.3d 818, 833 (6th Cir. 1995).

To warrant relief under § 2255, a petitioner must demonstrate the existence of an error of constitutional magnitude that had a substantial and injurious effect on the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Relief is warranted only where a petitioner has shown "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974) (internal quotation marks omitted).

**A**

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must establish two elements: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687–88. The first prong of this test requires Miller to demonstrate that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. This standard is highly deferential, and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Under the second prong, Miller must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Counsel's performance must

have "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686. The reviewing court must "determine if the proceeding was fundamentally unfair or unreliable; a court should not focus the analysis on the outcome." *Kinnard v. United States*, 313 F.3d 933, 935 (6th Cir. 2002).

A court is "not required to conduct an analysis under both prongs of the inquiry." *Mallett v. United States*, 334 F.3d 491, 497 (6th Cir. 2003). "'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'" *Id*. (quoting *Strickland*, 466 U.S. at 697).

On appeal, Miller contends that his sentencing counsel was ineffective in three ways. First, Miller claims his counsel should have argued that the district court employ a modified categorical approach to determine whether his juvenile conviction qualified as a predicate felony under the ACCA. Second, he claims his counsel should have objected to the district court's reliance on evidentiary hearings rather than *Shepard* documents to determine whether the juvenile conviction involved the use of a firearm, knife, or destructive device. Because his attorney failed to make these arguments, Miller contends that his juvenile conviction was incorrectly determined to be a predicate violent felony under the ACCA. Miller asserts that, had counsel made these arguments, he would have faced a sentence of only 120 months instead of 180 months.

Finally, Miller contends that his trial counsel failed to inform him that he faced a mandatory sentence of no less than 180 months under the ACCA if he was convicted at trial. Miller claims that if he had known that he faced a mandatory sentence, he would have accepted the Government's plea deal that offered less than 180 months' imprisonment.

**B**

A person convicted of being a felon in possession of a firearm under § 922(g)(1) generally is subject to a maximum prison term of ten years. 18 U.S.C. § 924(a)(2). The ACCA alters this maximum term and imposes a fifteen-year mandatory minimum sentence when a defendant convicted under § 922(g) has three or more prior convictions for "violent felonies" or "serious drug offenses." 18 U.S.C. § 924(e)(1). To qualify as a violent felony under the ACCA, a prior felony conviction must either have an element of the "use of physical force," 18 U.S.C. § 924(e)(2)(B)(i), or else be a conviction for a crime such as "burglary, arson, or extortion." 18 U.S.C. § 924(e)(2)(B)(ii).

Juvenile convictions can serve as predicate violent felonies under the ACCA. *United States v. Crowell*, 493 F.3d 744, 750 (6th Cir. 2007). A juvenile conviction constitutes a violent felony if it involves the use or carrying of a firearm, knife, or destructive device and would be punishable for a prison term exceeding one year. 18 U.S.C. § 924(e)(2)(B).

Miller does not dispute that his two adult convictions for involuntary manslaughter and attempted felonious assault qualify as predicate offenses under the ACCA. Rather, Miller argues that his 1990 juvenile conviction did not qualify as a predicate violent felony, leaving him with fewer than three qualifying predicate offenses and making the ACCA enhancement inapplicable. In turn, he argues that his attorney provided ineffective assistance by failing to make this argument at sentencing.

**i**

The Supreme Court's framework for determining whether a prior conviction falls within the ACCA's sentence-enhancing provisions originated in *Taylor v. United States*, 495 U.S. 575 (1990). In *Taylor*, the Court adopted the "categorical approach," which "requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense" as defined by state law and not to the specific conduct and circumstances underlying the conviction. 495 U.S. at 602. If the relevant statute "has the same elements as the 'generic' ACCA crime, then the prior conviction can serve as an ACCA predicate." *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013). "The key, we emphasize[], is elements, not facts." *Id.*

Noting the limitations of the categorical approach, the Supreme Court also created the "modified categorical approach" for use in cases where a statute of prior conviction covers multiple subjects. Because some statutes are overinclusive and may or may not meet the ACCA's prohibitions, the modified categorical approach permits the sentencing court "to 'go beyond the mere fact of conviction' and to determine, by using other sources, whether the defendant's prior crime was in the subset of the statutory crime" penalized by the ACCA. *Shepard*, 544 U.S. at 30 (quoting *Taylor*, 495 U.S. at 602). These sources include the charging document, the written plea agreement, the transcript of plea colloquy, "and any explicit factual finding by the trial judge to which the defendant assented." *Id.*

The modified categorical approach is the exception in ACCA cases while the categorical approach is the general rule. The modified categorical approach may only be used when a divisible statute forms the basis of the defendant's conviction. *Descamps*, 133 S. Ct. at 2293. As the

Supreme Court explained, the modified categorical approach is merely a "tool for implementing the categorical approach." *Id.* at 2284.

**ii**

Miller's juvenile conviction was based on Ohio's felonious assault statute, which in 1990 provided:

> (A)    No person shall knowingly
> (1)    Cause serious physical harm to another;
> (2)    Cause or attempt to cause physical harm to another by means of a deadly weapon or ordnance, as defined in section 2923.11 of the Revised Code.

Ohio Rev. Code § 2903.11 (Baldwin's Ohio Revised Code Annotated (West 1993)). The Sixth Circuit has previously held that " 'a conviction under Ohio Revised Code § 2903.11(A) qualifies as a violent felony' under the ACCA because it has the physical-force element defined in 18 U.S.C. § 924(e)(2)(B)(i)." *United States v. Hibbit*, 514 F. App'x 594, 597 (6th Cir. 2013) (quoting *United States v. Anderson*, 695 F.3d 390, 402 (6th Cir. 2012)). Thus, had Miller been convicted under Ohio Revised Code § 2903.11(A) as an adult, the categorical approach would have shown that a felonious assault conviction could serve as a predicate felony.

Because Miller was convicted of felonious assault *as a juvenile*, however, the analysis changes. For a juvenile conviction to qualify as a predicate felony, the conviction must have involved the use or carrying of a firearm, knife, or destructive device. Under the categorical approach, it is unclear whether Miller's juvenile conviction under Ohio law involved the prohibited weapons required to make it a predicate felony under the ACCA. The Ohio statute is a divisible statute; that is, a sentencing court cannot determine, simply by looking at the statute, which version

of the offense a defendant was convicted of. Only if Miller was convicted under subsection (2) of the Ohio statute, which involves harm or attempted harm with a "dangerous weapon or ordnance," could Miller's conviction serve as a predicate felony. Therefore, the felonious assault conviction requires a modified categorical analysis to determine whether the conviction necessarily involved the use or carrying of a firearm, knife, or destructive device. *Shepard*, 544 U.S. at 24.

**iii**

Here, two *Shepard* documents indicate that Miller's juvenile conviction for felonious assault "necessarily or allegedly involved the use of a 'firearm, knife, or destructive device.' " *United States v. Wells*, 473 F.3d 640, 649 (6th Cir. 2007) (quoting 18 U.S.C. § 924(e)(2)(B)). The first *Shepard* document, Miller's plea colloquy transcript, reveals that Miller admitted to using a firearm during the assault:

A.   Then I went **--** I left and I came back, and I said, "Where Thomas go, y'all?" They said, "They standing in the back." I went in the back and I shot.

Q.   So, am I to understand that you pulled a gun and fired on Mr. Watkins that night?

A.   Yes.

Q.   What kind of gun was that?

A.   A .32.

Q.   And you shot him twice?

A.   No, more than twice.

Aug. 9, 1990 Hr'g Tr. 830, *State of Ohio v. Miller*, No. 90-15312 (N.D. Ohio Aug. 9, 1990). The second *Shepard* document, the Referee's Report and Judgment Entry, also reveals that Miller used

a firearm during the assault: "FINDINGS OF FACTS: . . . Marvin left and got a gun, came back and shot Mr. Watkins twice, causing serious physical harm." Pl.'s Sent. Memo, Ex. 1 Juvenile Conviction, *State of Ohio v. Miller*, No. 90-15312 (N.D. Ohio Aug. 10, 1990). Both *Shepard* documents indicate that the conviction involved the use of a firearm, and that Miller was convicted under Ohio Rev. Code § 2903.11(A)(2). Accordingly, the juvenile conviction for felonious assault qualified as a predicate felony, and Miller was appropriately classified as a career offender under the ACCA.

Although the *Shepard* documents reveal that the juvenile conviction for felonious assault qualifies as a predicate violent felony, Miller argues that his sentencing counsel should have objected to the district court's reliance on information learned during the evidentiary hearings, rather than on the *Shepard* documents alone, in determining whether the juvenile conviction qualified as a predicate felony. To determine whether Miller's juvenile conviction qualified as a predicate offense, the district court held two evidentiary hearings. On September 30, 2008, four witnesses testified about Miller's juvenile court proceedings. Two days later, on October 2, 2008, three additional witnesses testified. After the hearings, the district court concluded that Miller's juvenile conviction qualified as a predicate felony and sentenced Miller to 180 months, the mandatory minimum under the ACCA.

Miller has not shown that he suffered prejudice as a result of the district court's reliance on the evidentiary hearings because, as explained above, the *Shepard* documents standing alone reveal that the juvenile conviction qualified as a predicate felony under the ACCA. The district court's reliance on the information learned during the evidentiary hearings resulted in the court's

determination that the juvenile conviction qualified as a predicate felony, which is the same conclusion that results from consulting the *Shepard* documents alone. Miller has not demonstrated a reasonable probability that, but for counsel's alleged failure to object to the district court's reliance on the evidentiary hearings, the result of his proceedings would have been different.

**iv**

Miller's claim that his counsel was ineffective for failing to employ a modified categorical approach and for failing to object to the district court's reliance on an evidentiary hearing both fail for lack of prejudice. Accordingly, the district court properly ruled on these claims.

**C**

Miller's final argument is that trial counsel was ineffective for failing to inform him that if he elected to go to trial and lost, he would be subject to the ACCA and the 180-month mandatory minimum sentence. Miller insists that, had he known he faced a minimum sentence of 180 months under the ACCA, he would have elected to accept the government's plea agreement rather than proceed to trial. He therefore requests that the case be remanded to the district court so that an evidentiary hearing can be held to determine whether Miller received ineffective assistance of counsel during the plea negotiations.

A district court's refusal to conduct a § 2255 evidentiary hearing is reviewed for an abuse of discretion. *Docherty v. United States*, 536 F. App'x 547, 551 (6th Cir. 2013) (citing *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). "A prisoner who files a motion under Section 2255 challenging a federal conviction is entitled to a prompt hearing at which the district court is to determine the issues and make findings of fact and conclusions of law with respect thereto." *Smith*

*v. United States*, 348 F.3d 545, 550 (6th Cir. 2003) (quoting 28 U.S.C. § 2255) (internal quotation marks omitted). "The hearing is 'mandatory unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Id.* (quoting *Fontaine v. United States*, 411 U.S. 213, 215 (1973)). We have held that "a Section 2255 petitioner's burden 'for establishing an entitlement to an evidentiary hearing is relatively light.'" *Id.* at 551 (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)).

The district court did not consider Miller's claim that counsel was ineffective for failing to inform him he would be subject to an ACCA enhancement, and we cannot conclusively determine that Miller is not entitled to relief on his claim. From the minimal facts provided on appeal, it is possible that Miller's counsel provided constitutionally ineffective assistance during plea negotiations.

**i**

The Sixth Amendment right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. *Missouri v. Frye*, 132 S. Ct. 1399, 1407 (2012). Thus, criminal "defendants are entitled to the effective assistance of competent counsel" during that process. *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) (internal quotation marks omitted).

> If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it. If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence.

*Id.* at 1387. Accordingly, we must examine the terms of the plea bargain before determining whether counsel provided ineffective assistance.

Here, it appears that Miller was offered at least one plea arrangement. During the April 23, 2008 pretrial conference, the prosecutor stated, "I actually prepared a written plea agreement in this case and forwarded it on to [defense counsel]." Ex. B at 9. Miller apparently rejected this plea agreement:

> The Court:    So I have two questions: You've had enough time to review whether or not you wish to pursue a plea agreement? The answer is?
>
> Miller:       Yes.
>
> The Court:    And it's your desire to go forward with trial?
>
> Miller:       Yes.

*Id*. at 18.

Miller claims he rejected the plea agreement because his attorney erroneously informed him that he was not a career offender under the ACCA. Indeed, the exhibits Miller attached to his motion to supplement suggest that neither the prosecutor nor defense counsel believed that the ACCA's statutory enhancement would be applicable to him. At the pretrial hearing, defense counsel stated that "[t]he government and I have discussed this case many times. [The prosecutor] and I do not believe that he is a career offender." *Id*. at 8. Based on that belief, defense counsel wrote Miller a letter that advised: "Based upon your criminal record and offense, I estimate that your guidelines range would be 63 to 78 months. If you plead guilty and accept responsibility for your conduct, the estimated guidelines range would be 46–57 months." Ex. D. Defense counsel then explained the prosecutor's position:

> [The prosecutor] told me that if you plead guilty, he does not care what [the judge] does regarding your sentence. The guidelines are not mandatory, so [the judge] is not bound by them. With [the prosecutor] not taking a strong position, we would have

room to argue for a lesser sentence.

*Id.* And at the pretrial conference, defense counsel appears to have claimed that she had advised Miller that the ACCA would not apply to him: "We have discussed this many times. My client having been up at Milan, we've discussed career offenders because he's been housed with people." Ex. B at 8. Thus, both the prosecutor and defense counsel appear to have contemplated a plea agreement that did not comport with the ACCA's 180-month mandatory minimum because they erroneously believed the ACCA was not applicable.

**ii**

The exhibits attached to Miller's pro se brief, if genuine, demonstrate legitimate factual questions about the plea negotiations. Despite our request for supplemental briefing from both parties on the issue,[2] neither the Government nor Miller's counsel refers to any of the exhibits attached to Miller's pro se supplemental brief. Nothing in the record explains the terms of the plea agreement, and the Court cannot determine whether Miller received ineffective assistance of counsel without knowing more about the alleged offer for a favorable plea arrangement. It is possible that the alleged plea agreement would have allowed Miller to plead guilty to an offense not subject to the ACCA's mandatory enhancement provisions, in which case Miller could have received less than 180 months in prison.

Alternatively, even if Miller would have pleaded guilty to an ACCA-qualifying charge, the government may have nonetheless been able to offer Miller a sentence lower than the ACCA's 180-

---

[2]The December 9, 2013 Order requested that the parties "file supplemental briefs on the issue raised in Appellant Marvin Miller's pro se brief filed October 12, 2012: Whether Mr. Miller's counsel was ineffective for failing to advise him during plea negotiations that he was eligible for enhanced sentencing under the Armed Career Criminal Act, 18 U.S.C. § 924."

month minimum. For example, if a defendant provides "substantial assistance," the prosecutor can offer a sentence below the statutory minimum under 18 U.S.C. § 3553(e). *See United States v. McIntosh*, 484 F.3d 832, 835 (6th Cir. 2007) ("A court may not depart below the statutory minimum unless the government moves for such a departure under either 18 U.S.C. §§ 3553(e) or 3553(f).") (citing *Melendez v. United States*, 518 U.S. 120, 125–26 (1996)). Here, it appears that the prosecutor did offer a plea agreement that was lower than the ACCA's 180-month minimum, but there is no explanation as to the basis for the lower offer. Because we do not know the circumstances surrounding the plea offer, and because counsel have not addressed it in their supplemental papers, an evidentiary hearing is necessary.

### iii

Of course, the evidentiary hearing may reveal, as Miller's exhibits seem to suggest, that the prosecutor and Miller's counsel erroneously believed that the ACCA did not apply to Miller's juvenile conviction, and therefore made a plea offer based on that erroneous belief. If so, the district court will be required to address *Strickland*'s prejudice prong and possibly the separate question of the appropriate remedy under *Lafler*.

In the context of a rejected plea agreement, the *Strickland* prejudice test requires a defendant to show a reasonable possibility that the outcome of the plea process would have been different with competent advice:

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court . . . that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, 132 S. Ct. at 1385. Indeed, as the *Lafler* Court outlined, "If no plea offer is made, or a plea deal is accepted by the defendant but rejected by the judge, the issue raised here simply does not arise." *Id.* at 1387.

Even if the district court determines that it could have enforced the plea agreement's terms—despite the fact that it contemplated a sentence below the ACCA's statutory minimum—then it must also address the appropriate remedy. When a defendant meets the *Strickland* burden of showing that he received ineffective assistance of counsel, the district court must impose a remedy that will "neutralize the taint" of the constitutional violation. *United States v. Morrison*, 449 U.S. 361, 365 (1981). The Supreme Court has suggested that if "the sole advantage a defendant would have received under the plea is a lesser sentence," then the appropriate remedy may be to conduct an evidentiary hearing and let the district court "exercise discretion in determining whether the defendant should receive the term of imprisonment the government offered in the plea, the sentence he received at trial, or something in between." *Lafler*, 132 S. Ct. at 1389. The Supreme Court explicitly left "open to the trial court how best to exercise that discretion in all [] circumstances," *id*. at 1391, and expressly provided that "it is not necessary here to decide as a constitutional rule that a judge is required to prescind (that is to say disregard) any information concerning the crime that was discovered after the plea offer was made." *Id*. at 1389.

### iv

In addition to raising factual issues concerning whether counsel provided ineffective assistance, Miller asserts that he would have pleaded guilty had he known that he faced an ACCA

enhancement at trial. "'Although some circuits have held that a defendant must support his own assertion that he would have accepted the offer with additional objective evidence, we in this circuit have declined to adopt such a requirement.'" *Smith*, 348 F.3d at 551 (quoting *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003)). Miller's assertion, in addition to the disparity between the proffered plea range of 46–57 months and the 180 months received after trial, are sufficient to show that there is a reasonable probability that, but for counsel's alleged errors, Miller would have pleaded guilty.

Miller should have been given the opportunity at an evidentiary hearing in the district court to develop a record regarding his counsel's alleged ineffectiveness during the plea negotiations. Therefore, we will remand this one claim to the district court for an evidentiary hearing.

**V**

For the reasons set forth above, the district court properly denied Miller's claims that his counsel was ineffective for (1) failing to employ a modified categorical approach to determine whether he qualified for a sentence enhancement under the ACCA and (2) failing to object to the district court's reliance on an evidentiary hearing rather than the *Shepard* documents to determine that he qualified under the ACCA.

However, the district court improperly denied Miller's motion to supplement his habeas petition, and we therefore **VACATE** the judgment of the district court and **REMAND** for an evidentiary hearing on Miller's claim that he received ineffective assistance of counsel during plea negotiations.